16-CV-06785 (KPF)(AJP)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELLA SHILLINGFORD,
Individually and on Behalf of All Other Persons
Similarly Situated,

Plaintiffs,

-against-

ASTRA HOME CARE, INC. d/b/a "True Care Home
Health   Care,"   MICHAEL   WERZBERGER,
REBECCA ROSENZWEIG, and JOHN DOES #1-10,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS AND COLLECTIVE CERTIFICATION

**MELTZER, LIPPE, GOLDSTEIN
& BREITSTONE, LLP**
Attorneys for the Defendants
190 Willis Avenue
Mineola, N.Y.  11501
(516) 747-0300

Christopher P. Hampton, Esq.
Gerald C. Waters, Jr., Esq.
Larry R. Martinez, Esq.

# TABLE OF CONTENTS

**<u>Page</u>**

TABLE OF CONTENTS ........................................................................................... i

TABLE OF AUTHORITIES ................................................................................... iii

PRELIMINARY STATEMENT ............................................................................. 1

ARGUMENT .......................................................................................................... 3

      POINT I ........................................................................................................ 3

          PLAINTIFF CANNOT CONDITIONALLY
          CERTIFY AN FLSA COLLECTIVE ACTION........................................ 3

          A.  Conditional Certification Standard……………………………………3

          B.  The Companionship Exemption and
              Other Relevant FLSA Regulations……………………………………5

          C.  Individualized Inquiries as to Application
              of the Companionship Exemption Preclude
              Conditional Certification of the FLSA
              Collective as a Matter of Law…………………...................................8

          D.  Plaintiff is Not Similarly Situated to Putative
              FLSA Collective Members…………………………………………..12

          E.  Plaintiff Cannot Establish a Common Policy
              or Plan Violative of the FLSA………………………………………14

      POINT II ...................................................................................................... 17

          PLAINTIFF'S REQUEST TO CERTIFY AN
          NYLL CLASS ACTION MUST BE DENIED ....................................... 17

          A.  Legal Standard………………………………………………………17

          B.  This Court Should Decline Supplemental
              Jurisdiction over the NYLL Class……………………………………19

          C.  Commonality and Typicality……………….....................................19

          D.  Adequacy…………………………………………………………….28

E.  Rule 23(b)(3)…………………………………………….......................29

CONCLUSION.................................................................................................................. 30

**TABLE OF AUTHORITIES**

**Federal/Supreme Court Cases**                                                    **Pages**

Ali v. NYC Hlth. and Hosps. Corp.,
     No. 11-CV-6393(PAC), 2013 WL 1245543 (S.D.N.Y. Mar. 27, 2013)…………………16

Almeida v. Aguinaga,
     500 F.Supp.2d 366 (S.D.N.Y. 2007)…………………………………………………………..23

Alves v. Affiliated Home Care of Putnam, Inc.,
     No. 16-CV-1593(KMK), 2017 WL 511836 (S.D.N.Y. Feb. 8, 2017)……………………7

Bad Frog Brewery, Inc. v. New York State Liquor Authority,
     134 F.3d 87 (2d Cir.1998)…………………………………………………………………..22

Bangoy v. Total Homecare Solutions, LLC,
     No. 15-CV-573(SSB), 2015 WL 12672727 (S.D.Ohio December 21, 2015)……………7

Cabrera v. Schafer,
     No. 12-CV-6323(ADS)(AKT), 2016 WL 6998670 (E.D.N.Y. Nov. 28, 2016)………...24

Callari v. Blackman Plumbing Supply, Inc.,
     307 F.R.D. 67 (E.D.N.Y. 2015)………………………………………….……20, 22, 28

Chen v. Major League Baseball,
     6 F.Supp.3d 449 (S.D.N.Y. 2014)………………………………………………………18, 19

Cowell v. Utopia Home Care, Inc.,
     44 F.Supp.3d 398 (E.D.N.Y. 2015)…………………………………………………...5, 13

Cowell v. Utopia Home Care, Inc.,
     No. 14-CV-736(LDW)(SIL), 2016 WL 4186976 (E.D.N.Y. Aug. 8, 2016)….3, 4, 8, 9, 10

DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.,
     27 F.Supp.3d 313, 329 (E.D.N.Y. 2014)………………………………………………18, 19

Dillow v. Home Care Network Inc.,
     No. 16-CV-612(TSB), 2017 WL 749196 (S.D.Ohio Feb. 27, 2017)……………………7

Eng-Hatcher v. Sprint Nextel Corp.,
     No. 07-CV-7350(BSJ), 2009 WL 7311383 (S.D.N.Y. Nov. 13, 2009)…………………..4

Enriquez v. Cherry Hill Market Corp.,
     993 F.Supp.2d 229 (E.D.N.Y. 2014)...………………………………...20, 22, 23, 28, 29

<u>**Pages**</u>

<u>Franco v. Jubilee First Ave. Corp.</u>,
     No. 14-CV-07729(SN), 2016 WL 4487788 (S.D.N.Y. Aug. 25, 2016)…………………24

<u>George v. Companions of Ashlands, Inc.</u>,
     No. 16-CV-00429, 2016 WL 4641468 (N.D. Ohio Sept. 7, 2016)………………………11

<u>Guaman v. J&C Fashion, Inc.</u>,
     No. 14-CV-8143(GBD)(GWG), 2016 WL 791230 (S.D.N.Y. Feb. 22, 2016)………….23

<u>Home Care Assoc. of Am. v. Weil</u>,
     76 F.Supp.3d 138 (Dist. Col. 2014)………………………………………………………6

<u>Home Care Assoc. of Am. v. Weil</u>,
     78 F.Supp.3d 123 (Dist. Col. 2015)………………………………………………………6

<u>Home Care Assoc. of Am. v. Weil</u>,
     79 F.3d 1084 (D.C. Cir. 2015)……………………………………………………………6

<u>In re Visa Check/MasterMoney Antitrust Litig.</u>,
     280 F.3d 124 (2d Cir. 2001)……………………………………………………………...29

<u>Jackson v. Bloomberg</u>,
     298 F.R.D. 152 (S.D.N.Y. 2014)………………………………………………………...19

<u>Jasper v. Home Hlth. Connection, Inc.</u>,
     No. 16-CV-125(EAS), 2016 WL 3102226 (S.D.Ohio June 1, 2016)…………………7, 11

<u>Jenkins v. TJX Companies Inc.</u>,
     853 F.Supp.2d 317 (E.D.N.Y. 2012)……………………………………………………16

<u>Jolly Roger Offshore Fund Ltd. v. BKF Capital Grp., Inc.</u>,
     No. 07-CV-3923(RWS), 2007 WL 2363610 (S.D.N.Y. Aug. 16, 2007)………………..28

<u>Keller v. AXA Equitable Life Ins. Co.</u>,
     No. 12-CV-4565(LTS)(RLE), 2013 WL 6506259 (S.D.N.Y. Dec. 12, 2013)………24, 30

<u>Kinkead v. Humana, Inc.</u>,
     No. 15-CV-01673(JAM), 2016 WL 39507373 (D.Conn. July 19, 2016)…………………7

<u>Korenblum v. Citigroup, Inc.</u>,
     195 F.Supp.3d 475 (S.D.N.Y. 2016)……………………………………………………4

<u>Laroque v. Domino's Pizza, LLC</u>,
     557 F.Supp.2d 346, 355-56 (E.D.N.Y. 2008)…………………………………………..4

**Pages**

Lundy v. Catholic Hlth. Sys. of Long Island, Inc.,
   711 F.3d 106 (2d Cir. 2013)……………………………………………………...18

Marcus v. AXA Advisors, LLC,
   307 F.R.D. 83 (E.D.N.Y. 2015)…………………………………………………22

Marisol v. Guiliani,
   126 F.3d 372 (2d Cir. 1997)…………………………………………………...19

Mata v. Foodbridge LLC,
   No. 14-CV-8754(ER), 2015 WL 3457293 (S.D.N.Y. June 1, 2015)……………………16

Morangelli v. Hemed Corp.,
   275 F.R.D. 99, 118 (E.D.N.Y. 2011)…………………………………………...27, 30

Myers v. Hertz Corp.,
   624 F.3d 537 (2d Cir. 2010)……………………………………………………17, 29

Offor v. Mercy Med. Ctr.,
   167 F.Supp.3d 414 (E.D.N.Y. 2016)……………………………………………13

Reyes v. NY F&B Servs., LLC,
   No. 15-CV-2882(LTS)(DCF), 2016 WL 796859 (S.D.N.Y. Feb. 22, 2016)…………3, 15

Romero v. H.B. Automotive Grp., Inc.,
   No. 11-CV-386, 2012 WL 1514810 (S.D.N.Y. May 1, 2012)……………………3, 11, 15

Ruiz v. Citibank, N.A.,
   93. F.Supp.3d 279 (S.D.N.Y. 2015)……………………………………...18, 19, 25

Sampson v. MediSys Health Network, Inc.,
   No. 10-CV-1342 (SJF)(ARL), 2012 WL 3027850 (E.D.N.Y. Feb. 9, 2012)……………18

Sanchez v. JMP Ventures, LLC,
   No. 13-CV-7624(KBF), 2014 WL 465542 (S.D.N.Y. Jan. 27, 2014)……………………16

Schear v. Food Scope Am., Inc.,
   297 F.R.D. 114 (S.D.N.Y. 2014)……………………………………………...29

Seabrook v. Jacobson,
   153 F.3d 70 (2d Cir.1998)……………………………………………...22, 24, 28

Segal v. Bitar,
   11-CV-4521(KF), 2015 WL 364449 (S.D.N.Y. May 26, 2015)………………………...20

**Pages**

Severin v. Project Ohr, Inc.,
      No. 10-CV-9696(DLC), 2012 WL 2357410 (S.D.N.Y. June 20, 2012)………..…..*passim*

Shayler v. Midtown Investigations, Ltd.,
      12-CV-4685(KBF), 2013 WL 772818 (S.D.N.Y. Feb. 27, 2013)………………20, 21, 22

Silva v. Calle 8, LLC,
      No. 12-CV-677(ERK)(MDG), 2013 WL 6330848 (E.D.N.Y. Dec. 5, 2013)…………...16

Torres v. Nature Coast Home Care LLC,
      No. 16-CV-1970-T-3(MAP), 2016 WL 5870217 (M.D. Fla. Oct. 7, 2016)……………..11

U.S. v. Kates,
      No. 10-MJ-1057(JJM), 2011 WL 1256858 (W.D.N.Y Apr. 1, 2011)…………………...11

Vasquez v. Vitamin Shoppe Industs., Inc.,
      No. 10-CV-8820, 2011 WL 2693712, (S.D.N.Y. July 11, 2011)………………………..17

Velasquez v. Digital Page, Inc.
      303 F.R.D. 435 (E.D.N.Y. 2014)………………………………………………………...20

Volpe v. Am. Language Commc'n Ctr., Inc.,
      200 F.Supp.3d 428 (S.D.N.Y. 2016)…………………………………………………18, 19

Wal-Mart v. Dukes,
      564 U.S. 338 (2011)……………………………………………………………………...19

Warman v. Amer. Nat'l Standards Inst.,
      193 F.Supp.3d 318 (S.D.N.Y. 2016)……………………………………………………….4

Wengerd v. Self-Reliance,
      No. 15-CV-293(SLO), 2016 WL 5661972 (S.D.Ohio October 3, 2016)…………………6

**State Cases**

Andryeyeva v. New York Health Care, Inc.,
      994 N.Y.S.2d 278 (N.Y. Sup. Kings Co. 2014)………………….....................11, 12, 22

Lai Chan v. Chinese-American Planning Council Home Attendant Program,
      50 Misc.3d 201, 21 N.Y.S.3d 814 (Sup. Ct. N.Y. County 2015)………………………..11

Melamed v. Americare Certified Special Servs., Inc.,
      No. 503171/12, 2014 WL 7149130 (Sup. Ct. N.Y. County Dec. 11, 2014)……………..11

**Pages**

Moreno v. Future Hlth. Servs., Inc.,
    No. 500569/13, 2015 WL 1969753 *3 (Sup. Ct. N.Y. County May 4, 2015)…..........11, 22

**Federal Statutes and Regulations**

28 U.S.C. § 1367………………………………………………………………………..18, 19

29 USC § 207(a)(1)………………………………………………………………………14

42 U.S.C. § 1320d-6………………………………………………………………………..13

29 C.F.R § 552.6 (McKinney's 2014)………………………………………......5, 7, 12, 13, 30

29 C.F.R § 552.109 (McKinney's 2014)…..……………………………………………5, 7, 30

29 C.F.R § 552.6 (McKinney's 2015)..…………………………………………….......6, 12, 30

29 C.F.R § 552.109 (McKinney's 2015)..………………………………………………..6, 30

29 C.F.R. § 785.21………………………………………………………...7, 8, 10, 12, 14, 30

29 C.F.R. § 785.22………………………………………………………...7, 8, 10, 12, 14, 30

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 23…………………………………………………………...…18, 19, 29

**State Statutes and Regulations**

NY Pub. Health Law § 3614-C………………………………………………………….25

N.Y.C.R.R. § 142-3.16………………………………………………………………...23

N.Y.C.R.R. § 142-3.2………………………………………………………………….20

N.Y.C.R.R. § 142-3.4………………………………………………………………….23

## PRELIMINARY STATEMENT

Ella Shillingford ("Plaintiff") seeks to conditionally certify a collective action pursuant to the Fair Labor Standards Act (the "FLSA") on behalf of herself and home health aides (an "Aide") against defendants Astra Home Care, Inc. d/b/a "True Care Home Health Care" ("True Care"), Michael Werzberger and Rebecca Rosenzweig (collectively, "Defendants") who allegedly "were not paid minimum wages and/or overtime wages under the [FLSA] since August 29, 2013," (the "FLSA Collective") and seeks to certify a class action pursuant to Federal Rule of Civil Procedure ("FRCP") Rule 23 for Aides "at any time since August 29, 2010" who purportedly were victims of the following alleged violations of the state New York Labor Law (the "NYLL"): (i) failure to pay time and one-half the New York minimum wage (and/or time and one-half the Aide's regular rate of pay) for every hour worked over 40 per week ("NYLL Overtime Claim"); (ii) failure to pay for all 24 hours of a Live-in Shift (defined below) ("Live-in Shift Claim"); (iii) failure to pay "spread of hours" pay for Aides who worked a spread of more than ten hours in a day ("Spread of Hours Claim"); (iv) failure to provide accurate wage notices ("Wage Notices") to Aides pursuant to the Wage Theft Prevention Act (the "WTPA") ("Wage Notice Claim"); and (v) failure to comply with the New York Home Health Care Wage Parity Act (the "WPA") ("WPA Claim") (the "NYLL Class").[1]

Plaintiff limits her allegations to Aides who "worked" shifts requiring them to remain with their assigned patient for at least 24 consecutive hours (referred to as a "Live-in Shift" herein). Thus only Aides who performed Live-in Shifts may ever be appropriate putative class/collective members. Notwithstanding who may be a member, the FLSA Collective and the

---

[1] See, e.g., Plaintiff's Notice of Motion (Docket Entry ("DE") 26) ("DE 26"); the Rand Declaration dated May 2, 2017 enclosing Exhibits "A" through "M" (the "Rand Decl. II"); Plaintiff's Memorandum of Law in Support of Motion for Certification of Class and Collective Action (DE 28) ("Plaintiff's Br.").

NYLL Class cannot be certified regardless because the need to perform individualized inquiries for each Aide to determine whether each individual putative collective/class member is entitled to relief precludes certification of a class and/or collective.  Specifically, application of the "Companionship" exemption (or at the least individualized determination of whether it should apply) precludes certification of the FLSA Collective as a matter of law.  Further, the FLSA Collective cannot be certified for two additional reasons.  First, as Plaintiff has not established she personally suffered violations of the FLSA, she cannot show she is similarly situated to other putative collective members who she claims did.  Second, Plaintiff has not established that a common policy violative of the FLSA existed.  Indeed, Plaintiff admits she has no knowledge of how much other Aides are paid, when they are paid, whether they received minimum wage/overtime, or whether those Aides were entitled to receipt of same.  Thus Plaintiff's motion seeking an FLSA Collective must be categorically denied.

As to the NYLL Class, it also cannot be certified because the individualized inquiry necessary to determine whether putative class members were entitled to minimum wage, overtime, or pay for all 24 hours (as opposed to just 13 hours as discussed below) of a Live-in Shift must be answered on an individual basis and thus cannot be resolved with answers which are common or typical to the Class.  As such, certifying the NYLL Class action would not provide a superior form of adjudication, because claims resolvable on a class-wide basis do not predominate over individualized inquiries.  Moreover, since Plaintiff cannot establish she personally was a victim of the claims for which she seeks certification, Plaintiff is not an adequate representative of the NYLL Class.  Thus the NYLL Class cannot be certified regardless of any determination as to whether individualized inquiries predominate.

## ARGUMENT

## POINT I

## PLAINTIFF CANNOT CONDITIONALLY CERTIFY AN FLSA COLLECTIVE ACTION[2]

### A. Conditional Certification Standard

To conditionally certify the FLSA Collective pursuant to 29 U.S.C. §216(b), Plaintiff must adduce facts supporting two contentions. First, Plaintiff must make a showing she, as Named Plaintiff, is "similarly situated with respect to [her] job duties/requirements, compensation, and employer policies" to putative collective members. Romero v. H.B. Automotive Grp., Inc., 2012 WL 1514810, *8 (S.D.N.Y. May 1, 2012). Next, Plaintiff must show, through a "factual showing [that she] and potential plaintiffs were victims of a common policy or plan that violated the law." Reyes v. NY F&B Servs., LLC, 2016 WL 796859, *2 (S.D.N.Y. Feb. 22, 2016). In order to satisfy this burden, Plaintiff must proffer "'substantial allegations of a factual nexus between [herself] and potential opt-in[s] with regard to [her] employer's alleged FLSA violation.'" Romero, 2012 WL 1514810 at *9 (citation omitted).

Prior to conditionally certifying a collective action, courts must find such certification promotes judicial efficiency. See Cowell v. Utopia Home Care, Inc., 2016 WL 4186976 (E.D.N.Y. Aug. 8, 2016) ("Cowell II") (denying conditional certification where granting same "would fail to promote judicial efficiency, one of the underlying policies of the collective action

---

[2] Defendants contend that, given the tenuous right to pursue conditional collective action certification espoused by Plaintiff, it is premature to determine: (i) the propriety of Plaintiffs' proposed Notice of Pendency (the "Notice") and/or Consent to Become Party Plaintiff annexed as Exhibit A (DE 27-1) and Exhibit B (DE 27-2) to the Rand Declaration I (DE 27), respectively; (ii) the right of Plaintiff to have such notice posted; and/or (iii) the obligation of Defendants to disclose the last known addresses and email addresses of putative members. However, should this Court determine conditional certification of the FLSA Collective is appropriate, Defendants request and reserve the right to arrange with counsel for Plaintiffs the submission of a revised Notice of Pendency and/or Consent to Become Party Plaintiff in conformity with the Court's Order(s) regarding conditional certification, as well as discuss Plaintiff's requests concerning the posting of the Notice and/or disclosure of putative member information.

mechanism").   Thus, "while [a p]laintiff's burden of proof is low, it is not non-existent –
certification is not automatic."  Reyes, 2016 WL 796859 at *3 (internal quotations and citation
omitted); see also Korenblum v. Citigroup, Inc., 195 F.Supp.3d 475, 480 (S.D.N.Y. 2016).  Since
(warranted) conditional certification should occur "early in the litigation and often before
discovery has begun," courts make a determination regarding same through review of only
plaintiffs' pleadings and relevant affidavits.   Warman v. Amer. Nat'l Standards Inst., 193
F.Supp.3d 318, 323 (S.D.N.Y. 2016).  If Plaintiff cannot adduce facts in her pleadings and/or
affidavits specifically identifying how all employees could be similarly situated; how a common
policy or plan to violate relevant wage-and-hour laws existed across all named defendants; and,
the sources of how they came to know such information, then collective action certification must
be denied.  See id. at *4-5.  Further, courts may consider affidavits or documentary evidence
submitted by defendants to determine the propriety of conditional certification.  See Korenblum,
195 F.Supp.3d at 482; Laroque v. Domino's Pizza, LLC, 557 F.Supp.2d 346, 355-56 (E.D.N.Y.
2008); Eng-Hatcher v. Sprint Nextel Corp., 2009 WL 7311383, *4 (S.D.N.Y. Nov. 13, 2009).

Notably, some professions cannot proceed as a collective action.  As will be detailed
below, Aides have been denied the ability to proceed as such based on their individualized job
duties as they relate to the individual needs of their patients.  As Aides can (for a majority of the
time relevant to this matter) be exempted from the FLSA's requirements based solely on their
duties, courts in this Circuit uniformly determine the individualized inquiry required to
determine the applicability of the "Companionship" exemption eviscerates the purpose of the
Section 216(b) collective action and requires each Aide pursue their claims on an individualized
basis.  See, e.g., Severin v. Project Ohr, Inc., 2012 WL 2357410 (S.D.N.Y. June 20, 2012);
Cowell II, 2016 WL 4186976.  The same well-reasoned approach should govern here.

### B.  The Companionship Exemption and Other Relevant FLSA Regulations

Prior to 2015, the FLSA provided a blanket exemption from its minimum wage and overtime provisions for Aides who performed services in conformity with the "Companionship" exemption.  Specifically, Aides who provided "services for the care[3], fellowship[4] and protection[5] for an infirm patient for at least 80 percent of their hours worked were exempted from the FLSA. 29 CFR § 552.6 (McKinney's 2014) (referring to section 13(a)(15) of the FLSA).[6]  Significantly, inclusion of the word "care" purposefully extended the Companionship to Aides who performed household chores meant to ensure the health of the patient, including meal-preparation, bed-cleaning and clothes-washing.  Id.; see also Cowell v. Utopia Home Care, Inc., 144 F.Supp.3d 398, 402-3 (E.D.N.Y. 2015) ("Cowell I") (holding "household work related to the care of the [patient] such as meal preparation, bed making, washing of clothes, and other similar services" was covered by the Companionship exemption).  Thus, the exemption extended to Aides who spent 20 percent of their time or less performing housework for someone besides the patient (i.e. cleaning of bedrooms, laundry, and meal-preparation for individuals other than the patient).  See, e.g., 29 CFR § 552.6 (McKinney's 2014); Cowell I, 144 F.Supp.3d at 402-3.  Further, pre-2015, any third-party employer of Aides (i.e. agencies who assigned Aides to a patient's home), including True Care, could claim this exemption. 29 CFR § 552.109 (McKinney's 2014).  In 2015, the Companionship exemption was substantively amended in two ways.  First, the word

---

[3] "Care" will be discussed in more detail below.

[4] "Fellowship" is defined as engaging the patient in "social, physical, and mental activities, such as conversation, reading, games, crafts, or accompanying the person on walks, on errands, to appointments, or to social events."  29 CFR § 552.6.

[5] "Protection" is defined as attending the patient in her home or in public to "monitor the [patient's] safety and well-being."  Id.

[6] See also the United States Department of Labor ("USDOL") Fact Sheet #25, a copy of which has been annexed to the Declaration of Christopher P. Hampton, Esq. dated June 1, 2017 (the "Hampton Decl.") at Exhibit "A".

"care" was removed from the statute, and thus an Aide had to provide services only for the "fellowship" and "protection" of the patient for at least 80% of their time to qualify for it.  See 29 CFR § 552.6 (McKinney's 2015).  Second, "[t]hird-party employers . . . [could no longer] avail themselves of [this] exemption," meaning agencies who employed Aides (i.e. True Care) had no right to claim this exemption regardless.  See 29 CFR § 552.109 (McKinney's 2015).

The newly-amended regulations were scheduled to become effective January 1, 2015. See id.  However, two federal decisions enjoined enforcement of the amended regulations. Specifically, on December 22, 2014, enforcement of 29 CFR § 552.109 as revised (removing ability of third-party agencies to claim exemption) was enjoined nationwide, meaning it could not be enforced as amended.  See Home Care Assoc. of Am. v. Weil, 76 F.Supp.3d 138 (Dist. Col. 2015) ("Weil I"), rev'd 799 F.3d 1084 (D.C. Cir. 2015) ("Weil III").  Further, on January 14, 2015, enforcement of 29 CFR § 552.6 as revised (removing "care" from definition of exemption) was enjoined nationwide as well.  See Home Care Assoc. of Am. v. Weil, 78 F.Supp.3d 123 (Dist. Col. 2015) ("Weil II"), rev'd, Weil III, 799 F.3d 1084 (D.C. Cir. 2015). On August 21, 2015, the Circuit Court of the District of Columbia reversed Weil I and Weill II, finding the amended regulations a reasonable interpretation of the FLSA.  Weill III, 799 F.3d at 1084.  However, Weill III's decision did not become operative until October 13, 2015, which is the date the Circuit Court issued its mandate implementing its decision.[7]   Importantly, the USDOL, the agency tasked with enforcing the revised regulations, held the amended regulations were not enforceable until November 12, 2015 (presumably to allow employers time to become compliant).  See id.  Thus the new regulations did not become effective until November 12, 2015.  See, e.g., Wengerd v. Self-Reliance, 2016 WL 5661972 (S.D.Ohio October 3, 2016);

---

[7] See the USDOL WH Division interpretative guidance concerning same, a copy of which has been annexed to the Hampton Decl. at Exhibit "B".

Bangoy v. Total Homecare Solutions, LLC, 2015 WL 12672727 (S.D.Ohio December 21, 2015). Plaintiff asserts the regulations became enforceable on January 1, 2015, despite the above.  See Plaintiff's Br. 3.[8]  This is against the weight of authority and contradicts the USDOL's position that the regulations were not enforceable until November 12, 2015.[9]

Notwithstanding this exemption, an employer (including True Care) may classify up to three hours of an Aide's day as "bona fide meal periods" and not pay for these hours, provided the Aide is completely relieved of duty during these three meal periods – this is true even if the employee cannot leave the patient's premises.  29 C.F.R. § 785.21.  Further, if an Aide works a Live-in Shift, the employer does not have to pay for eight hours of that Aide's "bona fide sleep periods" so long as: (i) an agreement (express or implied) between the employer and the Aide concerning this exclusion exists; (ii) the period excluded is not more than eight hours per Live-in shift; (iii) sleeping facilities are furnished to the Aide; and (iv) the sleep period is usually uninterrupted.  29 C.F.R. § 785.22.  Any work the Aide must do during the sleep period must be counted as "hours worked," and if the interruptions are so frequent that the Aide cannot get at least five hours of uninterrupted sleep, that entire period must be counted as "hours worked."  Id.

Thus, prior to November 12, 2015, an Aide who performed services for the care, fellowship and/or protection of incapable individuals for at least 80% of their hours worked were categorically exempt from the FLSA's minimum wage and/or overtime requirements.  29 CFR §§ 552.6, 552.109 (McKinney's 2014).  Moreover, regardless of the status of the Companionship

---

[8] Citing Dillow v. Home Care Network Inc., 2017 WL 749196, *2-5 (S.D.Ohio Feb. 27, 2017); Kinkead v. Humana, Inc., 2016 WL 39507373 (D.Conn. July 19, 2016).

[9] However, even if the revised regulations could be deemed actionable prior to November 12, 2015, the earliest they could be enforced would be October 13, 2015, as this is the date on which the District of Columbia Court of Appeals implemented its mandate affirming the validity of the amended regulations.  Alves v. Affiliated Home Care of Putnam, Inc., 2017 WL 511836, *3 (S.D.N.Y. Feb. 8, 2017) ("The . . . Court of Appeals for the District of Columbia Circuit issued a unanimous opinion affirming the validity of the Home Care Final Rule. . . The Rule became effective on October 13, 2015." (citations omitted)); see also Jasper v. Home Hlth. Connection, Inc., 2016 WL 3102226 (S.D.Ohio June 1, 2016) (finding the revised Rule became effective October 13, 2015).

exemption, and at all times relevant herein, an employer may pay for only 13 hours of a Live-in Shift, provided the above requirements are met.  29 C.F.R. §§ 785.21, 785.22.

### C. Individualized Inquiries as to Application of the Companionship Exemption Preclude Conditional Certification of the FLSA Collective as a Matter of Law

In order for Plaintiff to conditionally certify her FLSA Collective for Defendants' purported failure to pay putative collective members (*i.e.* other "similarly situated" Aides) minimum and/or overtime wages pursuant to the FLSA, she must first establish such members were entitled to receipt of minimum and/or overtime wages under the FLSA.  In other words, Plaintiff must establish that, prior to November 12, 2015, other putative collective members were not subject to the Companionship exemption.  Courts in the Second Circuit who have addressed this specific issue universally have held that determining the applicability of the Companionship exemption requires an individualized inquiry into the work performed by each Aide/putative member, and such individualized inquiry is incompatible with adjudication on a collective-wide basis as a matter of law.  See, e.g., Severin, 2012 WL 2357410; Cowell II, 2016 WL 4186976.

Notably, the facts and allegations in the instant action are remarkably similar to the Severin and Cowell II matters.[10]  In Severin, plaintiffs sought to conditionally certify a collective action concerning defendant's purported failure to pay overtime to Aides who allegedly were not exempt under the Companionship exemption.  2012 WL 2357410 at *1.  The Court denied conditional certification because of the individualized inquiry required to determine whether the Companionship exemption applied to putative collective members.  Id. at *3.  Given the relevant analysis in Severin, Defendants provide the Court with its comprehensive salient language:

> [I]t is premature to issue a collective action notice, and [we are] not sure that one will ever be appropriate in this case. Under the FLSA, the companionship exemption will be a complete bar to liability. The kinds of jobs that the

---

[10] Due to the applicability of Severin and Cowell II, we attach copies of same to the Hampton Decl. at Exhibit "C".

companions hold are individualized. They each have separate patients or clients; they have to tailor their duties indeed their hours—everything to the needs of the individual client. . . .  So the plaintiff would have to establish on an individual plaintiff-by-plaintiff basis that somehow they performed general household work more than 20 percent of the time, and of course any work, household work, that is related to the fellowship, care or protection of their client wouldn't negate the exemption. So there are so many fact-specific inquiries—what kind of household work was performed; was it related to the fellowship, care and protection of the client; if it was not so directly related such that it could be considered general household work, did it constitute more than 20 percent of the time that the individual spent in that client's home or environment.  So these are very fact-specific inquiries that [are not] susceptible . . . to a similarly-situated person analysis [to] support the issuance of a collective action notice.  Id.

Similarly, the Cowell II plaintiff sought to conditionally certify an FLSA collective for minimum and overtime wages purportedly owed to herself and other "similarly situated" Aides. 2016 WL 4186976 at *1.  Defendants contended the Companionship exemption precluded such recovery.  See id.  As to this, the Court denied plaintiff's request for conditional certification because "determination of whether [p]laintiff was exempt requires consideration of a fact-intensive analysis of factors such as what tasks she performed . . . and how [they] related . . . to the individual . . . needs of her patient."  2016 WL 4186976 at *6.[11]

This is exactly the case here.  Defendants maintain, prior to November 12, 2015, Plaintiff, and any purportedly similarly situated Aides, were exempt from the FLSA because they only performed duties for the fellowship, protection and care of their patients – i.e. duties specifically limited to the needs identified in the individual Plans of Care of their patients.[12] Indeed, Defendants were required to expend an inordinately large percentage of the time allowed

---

[11] As the Court further noted therein, "[the putative members'] duties are specifically defined by, and limited to, the care items identified in each individual patient's Plan of Care, which depend on many factors, including, among other things: (i) the patient's condition and needs; (ii) the number of authorized hours; (iii) the size, characteristics and condition of the patient's residence; and (iv) whether the patient lives with family members or others. Therefore . . .  the unique and individualized Plans of Care that are prepared for [defendant's] patients, and which [putative members] are required to follow, result in very fact-specific inquiries that are not susceptible . . . to a similarly-situated person analysis that would support the issuance of a collective action notice."  Id.

[12] See the Declaration of Yehuda Schneider, dated May 26, 2017 ("Schneider Decl."), ¶¶ 7-10.

for Plaintiff's initial deposition in discussing: (1) the necessary duties indicated on the Plans of Care for Plaintiff's patients; (2) the individualized duties Plaintiff actually performed; (3) the amount of time Plaintiff spent performing each duty discussed; and (4) the amount of time Plaintiff spent eating or sleeping while relieved of her duties on a daily basis.[13]

These exact individualized allegations and inquiries would need to be undertaken for every single putative collective member to determine whether such Aide was subject to the Companionship exemption prior to November 12, 2015, and therefore entitled to FLSA minimum wage and overtime compensation.  Further, in order to determine whether Plaintiff and putative collective members did not receive the FLSA-required minimum wage after November 12, 2015, the Court would need to determine whether Plaintiff, and each and every putative collective member, did not receive the required "bona fide meal/sleep periods" on every single day they worked, sufficient to entitle them to pay for more than 13 hours of a Live-in Shift.[14] See, e.g., 29 C.F.R. §§ 785.21, 785.22.  Such individualized inquiry defeats a primary reason for conditional certification of the FLSA Collective – judicial efficiency – and thus cannot be countenanced by this Court.  Cowell II, 2016 WL 4186976 at *7; see also Severin, 2012 WL 2357410 at *10 (denying minimum wage certification, because plaintiffs' entitlement to pay for more than 13 hours of a 24-hour shift required individualized inquiry regarding whether Aides "did not in fact receive eight hours of sleep time").  As such, conditional certification here is inappropriate, given the individualized inquiry relevant to the Companionship exemption.

In an effort to avoid this well-established law, Plaintiff asserts "[c]ourts regularly certify

---

[13] See the Transcript of the Deposition of Ella Shillingford, dated March 28, 2017 (the "Shillingford Trans."), p. 146-69, 173-93, 196-208, 213, 218-50, excerpts of which have been annexed to the Hampton Decl. at Exhibit "D."

[14] Plaintiff's inability to conditionally certify an FLSA Collective following November 12, 2015 concerning purported overtime violations is discussed in detail below.

collective classes of home health aides." Plaintiff's Br. 4.[15]   Notably, unlike Defendants, Plaintiff relies only on federal cases outside the Second Circuit and a controversial New York state decision currently on appeal to support this specious assertion.  Such decisions are not binding on this Court.  See U.S. v. Kates, 2011 WL 1256858, *1 (W.D.N.Y Apr. 1, 2011) ("A decision of a federal district court judge is not binding precedent in . . . a different judicial district.").  Even if they were, these cases are readily distinguished and should be rejected.

First, in Torres, the Middle District of Florida applied a different standard for determining the appropriateness of conditional certification – whether "other employees desire to opt-in."  2016 WL 5870217, *2.  This standard has not been approved by this Circuit.  See Romero 2012 WL 1514810 at *8.  Next, the George and Jasper defendants stipulated to conditional certification, and thus those courts did not need to determine the propriety of such certification, as is necessary here.  See 2016 WL 4641468 at *1; 2016 WL 3102226 at *2.  More importantly, the Jasper decision actually rejects Plaintiff's position, as that court only conditionally certified a collective action from October 13, 2015 forward, in effect holding the Companionship exemption precluded certification prior to then.  2016 WL 3102226 at *5.

Finally, the Andryeyeva court certified a class – not collective – action pursuant to the NYLL – not FLSA – because it held Aides who did not reside on the premises of their "employer" were entitled to be paid for all 24 hours of a Live-in Shift regardless.  994 N.Y.S.2d at 288-89.  This controversial decision is against the weight of authority in New York.  See Moreno v. Future Hlth. Servs., Inc., No. 500569/13, 2015 WL 1969753, *3 (Sup. Ct. N.Y.

---

[15] Citing Torres v. Nature Coast Home Care LLC, 2016 WL 5870217 (M.D. Fla. Oct. 7, 2016); George v. Companions of Ashlands, Inc., 2016 WL 4641468 (N.D. Ohio Sept. 7, 2016); Jasper, 2016 WL 3102226; Andryeyeva v. New York Health Care, Inc., 994 N.Y.S.2d 278 (N.Y. Sup. Kings Co. 2014).  Plaintiff's reliance on Lai Chan v. Chinese-American Planning Council Home Attendant Program, 50 Misc.3d 201, 21 N.Y.S.3d 814 (Sup. Ct. N.Y. County 2015) and Melamed v. Americare Certified Special Servs., Inc., 2014 WL 7149130 (Sup. Ct. N.Y. County Dec. 11, 2014) to support her position is also misplaced. Both decisions merely held that (in light of Andryeyeva) a plaintiff may allege failure to pay for all 24 hours of a Live-in Shift, without alleging missed sleep or meal breaks, and still survive dismissal.

County May 4, 2015) (declining to follow <u>Andryeyeva</u> for "fail[ure] to pay sufficient deference to the" New York State Department of Labor's own interpretation of the NYLL).[16]  <u>Andryeyeva</u> is on appeal and not precedent under New York State law.  <u>See</u> New York State Appellative Division, Second Department, Docket No. 2014-09087.   Even if it were, this decision contravenes applicable FLSA regulations.   <u>See</u> 29 C.F.R. §§ 785.21, 785.22 (allowing for payment of 13 hours of a Live-in Shift).  As such, the decisions cited by Plaintiff are inapposite.  Even if Plaintiff could proceed with the FLSA Collective as a matter of law, she is not similarly situated to putative collective members, requiring denial of the FLSA Collective regardless.

### D.  Plaintiff Is Not Similarly Situated to Putative FLSA Collective Members

Plaintiff seeks to certify the Collective for individuals who spent more than 20% of their time performing duties not subject to the Companionship exemption.  <u>See</u> DE 26.  Since Plaintiff has failed to establish that (prior to November 12, 2015) she spent more than 20% of her time performing duties other than for the care, fellowship and/or protection of her patients, she is not similarly situated to those she seeks to represent.   Indeed, Plaintiff acknowledges she spent between three and four hours of her shifts simply keeping her patients company and engaging them in conversation.  Shillingford Trans. 49-50, 189, 232-33.  These duties specifically qualify as "fellowship."  <u>See</u> 29 CFR § 552.6.  Plaintiff also acknowledges she spent an additional two to three hours of her shifts simply monitoring the safety and well-being of her patients.  Shillingford Trans. 34-35, 44-46, 156, 185-86, 197, 199.  These duties specifically qualify as "protection."  <u>See</u> 29 CFR § 552.6.  Finally, Plaintiff alleges she spent the majority of her remaining time preparing meals for her patient, making the patient's bed, cleaning the patient's

---

[16] <u>See</u> <u>also</u> the March 11, 2010 New York State Department Opinion Letter (RO-09-0169) ("NYDOL Opinion Letter"), a copy of which has been annexed to the Hampton Decl. at Exhibit "E".  As noted therein, the NYDOL, the agency charged with enforcing the NYLL, specifically provides employers may pay Aides for only 13 hours of a Live-in Shift and still comply with the NYLL.

room and bathroom, dressing the patient, showering the patient, and doing the patient's laundry. See, e.g., the Complaint (DE 1) ("Compl.") ¶¶ 38-47; the Declaration of Ella Shillingford dated August 18, 2016 ("Shillingford Decl."), ¶¶ 17-26; Shillingford Trans. 36-51.  These activities specifically qualified as "care" for the patient.  See, e.g., 29 CFR § 552.6 (McKinney's 2014); Cowell I, 144 F.Supp.3d at 402.  In sum, as acknowledged by Plaintiff's own testimony, Plaintiff spent at least 11 – 12 hours per Live-in Shift (i.e. approximately 90% of her working time) performing duties in conformity with the Companionship exemption.  Thus Plaintiff is not similarly situated to the alleged putative collective members herein.

Plaintiff also has failed to show she is similarly-situated to putative members after November 12, 2015.  Plaintiff seeks to conditionally certify the FLSA Collective for Aides who were purportedly paid improper minimum and/or overtime wages due to their never being able to receive their "bona fide sleep/meal periods" and to True Care's purported failure to ever pay for same.  Plaintiffs Br. 1.  Plaintiff failed to establish she never received her "bona fide sleep/meal periods" subsequent to November 12, 2015.[17]  Indeed, Plaintiff's only concession in this regard is that she "generally ate while working."  Compl. ¶ 25 and generally; Shillingford Decl. ¶ 14 and generally.  However, Plaintiff cannot allege she failed to receive every single "bona fide meal period" to which she was entitled following November 12, 2015, as her deposition testimony shows Plaintiff actually did receive regular breaks.  See Shillingford Trans. 213-14, 230-31.  To the extent Plaintiff claims she could not sleep every single night she worked for Lili H. (see, e.g., Compl. ¶ 29; Shillingford Decl. ¶ 9), such claim is logically absurd and deserves no

---

[17] Pertinently, Plaintiff worked for only one patient following November 12, 2015 – Ms. Lili H, for whom Plaintiff provided services from on or about November 16, 2015 until on or about January 31, 2016.  See the Schneider Decl., ¶ 39.  Please note full patient names will not be provided and/or have been redacted so as to comply with the Health Insurance Portability and Accountability Act ("HIPAA").  See, e.g., 42 U.S.C. § 1320d-6; Offor v. Mercy Med. Ctr., 167 F.Supp.3d 414 (E.D.N.Y. 2016).

credence.  Further, testimonial evidence also shows that, to the extent Aides do not receive their "bona fide sleep/meal periods," True Care either pays Aides for additional hours "worked", or (if an Aide truly cannot ever receive their required sleep) converts the Live-in Shift to two separate "split" 12-hour shifts to be worked by two separate Aides.[18]  Thus Plaintiff cannot establish she is similarly situated to other Aides concerning payment for missed "bona fide sleep/meal periods."  See 29 C.F.R. §§ 785.21, 785.22.

Similarly, Plaintiff cannot show she is similarly situated to other Aides regarding her individual FLSA overtime claims after November 12, 2015.  Specifically, Plaintiff never worked more than three Live-in Shifts per week during this post-November-12 time period, and instead usually worked only one or two.[19]  In the weeks where Plaintiff worked only one Live-in Shift, the maximum amount of hours she could have worked would be 24, and thus she would never be entitled to overtime.  See 29 USC § 207(a)(1); 29 C.F.R. §§ 785.21, 785.22.  In the weeks where Plaintiff worked two or three Live-in Shifts, she would only be entitled to overtime if she did not receive her "bona fide meal/sleep periods" sufficient to cause her to work more than 40 hours in that week.  See id.[20]  Thus Plaintiff cannot show she is similarly situated to the putative collective she seeks to represent in any regard, requiring rejection of her FLSA Collective claim.

### E.  Plaintiff Cannot Establish a Common Policy or Plan Violative of the FLSA.

In order to conditionally certify her FLSA Collective, Plaintiff must proffer substantial allegations of a "factual nexus" between herself and potential opt-ins showing she and they were

---

[18] See the Transcript of the Deposition of Yehuda Schneider, dated March 29, 2017 ("Schneider Trans."), p. 168-72, excerpts of which have been annexed to the Hampton Decl. at Exhibit "F."

[19] See the payroll records of Ella Shillingford ("Shillingford Payroll Records") (ER000038-50), relevant portions of which have been annexed to the Hampton Decl. at Exhibit "G".  As indicated therein, Plaintiff was paid for 13 hours, 26 hours or 39 hours.  See id.  These records indicate Plaintiff worked one Live-in Shift (allowed to be paid for 13 of 24 hours), two Live-in Shifts, or three Live-in Shifts, respectively.  See the Schneider Decl. ¶ 35.

[20] As noted above, determination of whether Plaintiff received her "bona fide sleep/meal periods" sufficient to entitle her to overtime is an individualized inquiry which precludes collective action certification.

victims of a "common" policy or plan that violated the FLSA.  See, e.g., Reyes, 2016 WL 796859 at *2; Romero, 2012 WL 1514810 at *9.  Plaintiff's allegations in this regard are woefully deficient, legally conclusory, and refuted by her deposition testimony, and thus she has failed to carry this burden, requiring categorical denial of the FLSA Collective.

Importantly, the vast majority of Plaintiff's actual factual allegations in purported support of the FLSA Collective consist only of the individualized allegations detailed above.  See, e.g., Compl. ¶¶ 38-48; Shillingford Decl. ¶¶ 17-27.  Otherwise, Plaintiff proffers one single statement in support of the requisite factual nexus: she claims to have spoken with "other [Aide] employees of Defendants, including Matilda" who informed her they were not paid for the full 24 hours of a Live-in Shift and/or did not receive any "premium pay for overtime hours over 40 hours in a week."  Shillingford Decl. ¶ 33; see also Compl., generally.  Plaintiff never identifies the Aides': (1) names; (2) patients; (3) amount of hours worked; (3) amount of pay received; and/or (4) duties.  Nor does she identify the dates, times or locations of these alleged conversations.  Instead, Plaintiff proffers wholly conclusory statements indicating her "knowledge" of True Care's purportedly "common" policies violative of the law.  See Shillingford Decl. ¶¶ 30, 32, 35.

Critically, Plaintiff's lack of knowledge necessary to actually support these bald allegations is evinced by her deposition testimony.  This testimony shows Plaintiff could not provide a single relevant factual detail as to her purported conversations with other Aides which would corroborate her allegations, despite repeated pressing.  See Shillingford Trans. 311, 316-28, 331-36 (noting Plaintiff's knowledge True Care employs more than 40 Aides comes from a "website"; indicating the relevant "complaints" about True Care concerned how patients and coordinators treated Aides, not pay; indicating other Aides also were paid a "flat rate" but not that such flat rate could be illegal).  Plaintiff even admits she has no actual knowledge of how

much other Aides are paid, when they are paid, whether they receive minimum wage/overtime, or whether they are even entitled to such receipt.  See id. 316-328, 331-36, 402-05.

Plaintiff's startling lack of detail with regard to these necessary facts alone requires her request for conditional certification be denied.  See, e.g., Mata v. Foodbridge LLC, 2015 WL 3457293, *4 (S.D.N.Y. June 1, 2015) (denying conditional certification because, "although [p]laintiff relies exclusively on observations of and conversations with coworkers to make the factual showing required of him at this stage of the proceeding, he does not provide any detail as to a single observation or conversation informing his decision to bring a collective action"); Sanchez v. JMP Ventures, LLC, 2014 WL 465542, *2 (S.D.N.Y. Jan. 27, 2014) (denying conditional certification where plaintiff's allegations failed to "provide any detail as to a single" observation and "conversation[] with other employees (whose first name [plaintiff] lists" concerning the purported common policy to violate the FLSA); Silva v. Calle 8, LLC, 2013 WL 6330848, *4 (E.D.N.Y. Dec. 5, 2013) (allegations made "upon information and belief" insufficient to sustain common policy); Ali v. NYC Hlth. and Hosps. Corp., 2013 WL 1245543, *3 (S.D.N.Y. Mar. 27, 2013) (denying conditional certification as "the only relevant evidence Plaintiff submits [concerning] . . . a common policy or plan is uncorroborated, anecdotal hearsay"); Jenkins v. TJX Companies Inc., 853 F.Supp.2d 317, 321-23 (E.D.N.Y. 2012) (denying conditional certification because plaintiff offered nothing more than conclusory allegations and his own deposition testimony in support of his common policy allegations).

Next, Plaintiff's counsel – not Plaintiff – argues payroll records from other Aides do not show receipt of overtime prior to November 12, 2015, thereby establishing the common policy violative of the FLSA.[21]  However, as noted above, Aides were generally not entitled to receipt

---

[21] See the Rand Declaration enclosing Exhibits "A" through "M" (the "Rand Decl. II") ¶ 44, and Exhibits "C" through "G" annexed thereto.

of overtime prior to November 12, 2015 because of their classification under the Companionship exemption, and "the mere classification of . . . employees . . . as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members as 'similarly situated' for § 216(b) purposes." <u>Vasquez v. Vitamin Shoppe Industs., Inc.</u>, 2011 WL 2693712, *4 (S.D.N.Y. July 11, 2011).

Finally, to the extent Plaintiff's counsel (not Plaintiff) argues payroll records from other Aides do not show receipt of overtime after November 12, 2015[22], Plaintiff is still not entitled to conditional certification for her FLSA Collective subsequent to this date for two reasons.  First, Plaintiff's allegation that these other Aides were not paid "full time and one half [for overtime]" is refuted by the actual documentary evidence upon which Plaintiff relies.  <u>See</u> Exhibits "B," "C," "E," "F," "G" of the Rand Decl. II (<u>e.g.</u>, ER000405, 578, 846, 658, 740 (enclosing wage records showing a regular rate of pay of $10.00/$10.93 per hour and an overtime rate of pay of $15.00/$16.39 per hour respectively, equaling one and one-half times the regular rate of pay)). Even if the records established an overtime violation, Plaintiff still cannot proceed with her Collective.  As noted above, Plaintiff was not entitled to overtime after November 12, 2015 and cannot satisfy her burden that "potential opt-in plaintiffs . . . be similarly situated to the <u>named plaintiff</u>."  <u>Myers v. Hertz Corp.</u>, 624 F.3d 537, 555 (2d Cir. 2010).  As such, Plaintiff's request for conditional certification of her FLSA Collective must be denied.

## POINT II

### PLAINTIFF'S REQUEST TO CERTIFY AN NYLL CLASS ACTION MUST BE DENIED

#### A.  Legal Standard

---

[22] <u>See</u> the Rand Decl. II ¶ 45, and Exhibits "B" through "I" annexed thereto.

The NYLL Class concerns claims raised pursuant to state law only.  See the Rand Decl. II; Plaintiff's Br. 12-24.  Thus, prior to considering certifying the NYLL Class, this Court must choose to exercise supplemental jurisdiction over it.  See 28 U.S.C. § 1367(a), (c). The exercise of supplemental jurisdiction is within the court's discretions, and requires consideration of "the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise supplemental jurisdiction."  Lundy v. Catholic Hlth. Sys. of Long Island, Inc., 711 F.3d 106, 118 (2d Cir. 2013).  To the extent the federal predicate claims relating to a state law claim have been dismissed, the balance of factors usually requires declination of supplemental jurisdiction.  See, e.g., Volpe v. Am. Language Commc'n Ctr., Inc., 200 F.Supp.3d 428 (S.D.N.Y. 2016); Chen v. Major League Baseball, 6 F.Supp.3d 449 (S.D.N.Y. 2014).  In fact, as to NYLL claims, courts routinely find a failure to certify a predicate FLSA Collective generally requires dismissal of any NYLL Class claims grounded upon similar theories of legal relief.  See, e.g., Ruiz v. Citibank, N.A., 93 F.Supp.3d 279, 300-01 (S.D.N.Y. 2015); DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc., 27 F.Supp.3d 313, 329 (E.D.N.Y. 2014).

Assuming this Court exercises supplemental jurisdiction, Plaintiff must establish entitlement to Class certification through a showing of four factors: (1) the class is too numerous for joinder of all members ("Numerosity"); (2) issues of law or fact are common to the class ("Commonality"); (3) Plaintiff's claims are typical of the class ("Typicality"); and (4) Plaintiff will adequately protect the interests of the class ("Adequacy").  FED. R. CIV. P. 23(a); accord Sampson v. MediSys Health Network, Inc., 2012 WL 3027850, *1 (E.D.N.Y. Feb. 9, 2012).  Plaintiff also must establish "that the questions of law or fact common to class members predominate over any questions affecting only individual members [such that the] action is superior to other available methods for fairly and efficiently adjudicating the controversy" ("Rule

23(b)(3)").  FED. R. CIV. P. 23(b)(3).  Plaintiff must satisfy all requirements by a preponderance

of the evidence.  Jackson v. Bloomberg, 298 F.R.D. 152, 159 (S.D.N.Y. 2014).

### B.  This Court Should Decline Supplemental Jurisdiction over the NYLL Class

As noted above, Plaintiff is not entitled to conditional certification of her FLSA

Collective.  As such, because Plaintiff pursues the NYLL Class on behalf of Aides other than

herself, the NYLL Class-relevant claims do not derive from a "common nucleus of operative

facts" – to wit, Plaintiff's individualized allegations concerning FLSA violations – and thus this

Court should decline to exercise supplemental jurisdiction over the Class.  See, e.g., Volpe, 200

F.Supp.3d at 428; Ruiz, 93. F.Supp.3d at 300-01; Chen, 6 F.Supp.3d at 449; DeSilva, Inc., 27

F.Supp.3d at 329 (E.D.N.Y. 2014).[23]  However, even if this Court were to choose to exercise

jurisdiction over the NYLL Class, it cannot be certified regardless, because Plaintiff has failed to

establish Numerosity, Commonality, Typicality, Adequacy, and/or Rule 23(b)(3).

### C.  Commonality and Typicality[24]

Courts find "[C]ommonality and [T]ypicality requirements tend to merge into one

another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)."  Marisol v.

Guiliani, 126 F.3d 372, 376 (2d Cir. 1997).  As such, they will be analyzed concurrently herein.

To establish Commonality "it is not sufficient to show that all class members have suffered a

violation of the same provision[s] of law."  Wal-Mart v. Dukes, 564 U.S. 338, 349 (2011).

Plaintiff cannot merely raise questions of law or fact which are common to the class – instead,

"the relevant issue for class certification is the ability of the class to generate common answers."

---

[23] Defendants do not assert this Court should decline supplemental jurisdiction over Plaintiff's individual NYLL claims.  Instead, exercising such jurisdiction over the NYLL Class where no FLSA Collective can be maintained will not promote judicial efficiency and thus is a compelling reason for its declination.  28 U.S.C. § 1367(c).

[24] Please note although the focus of Defendants' Opposition concerns Plaintiff's failure to satisfy Commonality, Typicality, Adequacy and Rule 23(b)(3), Defendants do not concede Numerosity is established.  Indeed, Defendants aver Plaintiff has failed to satisfy the Numerosity, as her individual knowledge concerning the number of necessary class members comes only from her review of an unknown "website." Shillingford Trans. 399-400.

<u>Velasquez v. Digital Page, Inc</u>. 303 F.R.D. 435, 441 (E.D.N.Y. 2014).

Typicality is satisfied only if "a class representative [possesses] the same interest and suffer[s] the same injury as the other members of the class."  <u>Shayler v. Midtown Investigations, Ltd.</u>, 2013 WL 772818, at *4, 8 (S.D.N.Y. Feb. 27, 2013); <u>see also, e.g.</u>, <u>Segal v. Bitar</u>, 2015 WL 364449, at *10 (S.D.N.Y. May 26, 2015) (finding Typicality had not been satisfied because class plaintiffs would be entitled to different relief); <u>Callari v. Blackman Plumbing Supply, Inc.</u>, 307 F.R.D. 67, 79 (E.D.N.Y. 2015) ("[C]lass certification is inappropriate where [class members are] subject to unique defenses."); <u>Velasquez</u>, 303 F.R.D. at 441 ("Typicality is satisfied when each class member's . . . makes similar legal arguments to prove the defendant's liability.").

       *i.  NYLL Overtime Claim*

Plaintiff seeks to certify a class consisting of all Aides who performed Live-in Shifts and did not receive overtime pay at the rate of one and one-half times of either their regular rate of pay (the "Regular OT Rate") or the New-York-State-mandated minimum wage (the "Minimum OT Rate").  Initially, the NYLL specifically exempts individuals subject to the Companionship exemption from receipt of overtime at the Regular OT Rate.  N.Y.C.R.R. § 142-3.2.  Thus, prior to November 12, 2015, Plaintiff's NYLL Overtime Claim concerning the Regular OT Rate requires individualized inquiry into whether each and every class member was subject to the Companionship exemption, and into whether they were entitled to additional pay on a daily basis because they did not receive their "bona fide meal/sleep periods."  Such individualized inquiry precludes the finding of "common answers," and thus cannot satisfy Commonality.  See <u>Severin</u>, 2012 WL 2357410; <u>see also</u> <u>Enriquez v. Cherry Hill Market Corp.</u>, 993 F.Supp.2d 229, 234-36 (E.D.N.Y. 2014) (denying certification because a determination as to how many hours class members worked, and thus whether they were underpaid, would amount

to a mini-trial for each member).  The failure to pay the Regular OT Rate after November 12,

2015 claim must also fail, because (as noted above), Plaintiff has not established her entitlement

to receipt of <u>any</u> overtime compensation from that date forward, and thus Plaintiff, as class

representative, cannot show she possessed "the same interest and suffer[ed] the same injury as

the other members of the class," and cannot satisfy Typicality.  <u>Shayler</u>, 2013 WL 772818, at *4.

Next, the NYLL Overtime Claim concerning purported failure to pay the Minimum OT

Rate for hours worked over 40 per week from August 29, 2013 to November 12, 2015 must also

be denied due to the potential application of the Companionship exemption.  <u>Severin</u> notes:

> The Court has already determined . . . the question of whether an individual
> [Aide] is subject to the [Companionship] exemption is not susceptible to
> generalized, classwide proof [for conditional collective action certification.] The
> plaintiff likewise has failed to satisfy <u>the much higher threshold</u> of Rule
> 23(b)(3)'s predominance requirement. In the context of this putative class action,
> the proper rate of overtime for each home attendant under the NYLL would need
> to be calculated with reference to the [Companionship] exemption. It would be in
> the interest of each individual class member to demonstrate that the exemption
> does not apply to him or her, and thus establish an entitlement to the higher rate of
> overtime pay set forth in 12 N.Y.C.R.R. § 142–3.2. . . The predominance of these
> individualized, fact-specific questions renders the . . . overtime claims ill-suited
> for classwide resolution.  2012 WL 2357410 at *6-7.

Thus, individualized inquiries as to <u>liability</u> (either for failure to pay the Regular OT Rate under

the FLSA or failure to pay the Minimum OT Rate under the NYLL) preclude a finding of

common answers, foreclosing certification of the NYLL Overtime Claim regardless.  <u>See</u> <u>id.</u>

Plaintiff also cannot certify the NYLL Overtime Claim as to purported Minimum OT

Rate violations before August 29, 2013 or after November 12, 2015 because Plaintiff: (1) did not

begin working for True Care until well after August 29, 2013 (on or about June 19, 2014)

(Shillingford Decl. ¶ 1); and (2) has not established she should have received payment of

overtime after November 12, 2015.  <u>See</u> <u>supra</u>.  As such, the overtime claims of class members

prior to August 29, 2013 and following November 12, 2015 (to the extent there actually are any)

are not typical of Plaintiff's claims.  See, e.g., Shayler, 2013 WL 772818, at *4; Marcus v. AXA Advisors, LLC, 307 F.R.D. 83 (E.D.N.Y. 2015).  Thus certification of the NYLL Overtime Claim should be categorically denied for failure to satisfy Commonality and/or Typicality.

      *ii.  Live-in Shift Claim*

As noted above, Andryeyeva controversially asserts that certain Aides are entitled to pay for all 24 hours of a Live-in Shift under the NYLL regardless, and despite countervailing FLSA rules.  45 Misc.3d at 820.  Thus Plaintiff relies on Andryeyeva to essentially argue the Live-in Shift Claim is amenable to resolution on a class-wide basis because there is no need for an individualized inquiry concerning entitlement to pay for all 24 hours of a Live-in Shift.  See Plaintiff's Br. 2.  However, as also noted above, this interpretation of the law has been explicitly rejected by the NYDOL and other relevant authority, and is on appeal.  See Moreno, 2015 WL 1969753 at *3; NYDOL Opinion Letter.  Thus this Court still would need to determine whether Plaintiff, and each and every class member, did not receive the required "bona fide meal/sleep periods" on every single day they worked sufficient to entitle them to pay for more than 13 hours of a Live-in Shift.  Much like with the NYLL Overtime Claim, such individualized inquiry precludes the finding of Commonality and/or Typicality necessary to certify the NYLL Class in this regard.  See, e.g., Severin, 2012 WL 2357410 at *10 ("The predominance of these individualized, fact-specific questions renders the . . . overtime claims ill-suited for classwide resolution."); Enriquez, 993 F.Supp.2d at 234-36; Callari, 307 F.R.D. at 79.[25]

---

[25] Even if this Court were to find the arguments advanced by Andryeyeva persuasive, whether "non-residential" Aides are to be paid for 13 hours or 24 hours of a Live-in Shift under the NYLL is an unresolved question of state law.  Compare Andryeyeva, 45 Misc.3d 820; with Moreno, 2015 WL 1969753.  Thus, given this conflict, the Court should decline supplemental jurisdiction over the Live-in Shift Claim.  See, e.g., Seabrook v. Jacobson, 153 F.3d 70, 72 (2d Cir.1998) ("Where a pendent state claim turns on . . . unresolved questions of state law . . . principles of federalism and comity may dictate that these questions be left for decision by the state courts."); Bad Frog Brewery, Inc. v. New York State Liquor Authority, 134 F.3d 87, 102 (2d Cir.1998) (declining supplemental jurisdiction where uncertainty existed about the enactment and application of administrative regulations).

*iii. Spread of Hours Claim*[26]

Plaintiff's Spread of Hours Claim also necessarily fails, and thus no Class concerning same can be certified.  First, "spread of hours" pay only applies to employees paid at no higher than the minimum wage rate on days where such "spread" may be due.  <u>See, e.g.</u>, <u>Guaman v. J&C Fashion, Inc.</u>, 2016 WL 791230, *5 (S.D.N.Y. Feb. 22, 2016); <u>Almeida v. Aguinaga</u>, 500 F.Supp.2d 366 (S.D.N.Y. 2007) ("[T]he spread-of-hours provision is properly limited to enhancing the compensation of those receiving only the minimum required by law.").  Here, there is no dispute Plaintiff and other Aides were paid above minimum wage for the 13 hours of the Live-in Shifts for which they were deemed to be working.  <u>See</u> the Rand Decl. II, Exs. "A" through "K" (noting pay rates which were never less than $10.00 per hour of a 13-hour Live-in Shift); <u>see</u> <u>also</u> the Rand Decl. II ¶ 24 (acknowledging the New York State minimum wage rate was never higher than $9.00 per hour during the relevant time period).

However, if Plaintiff argues her hourly rate fell below minimum wage because all 24 hours of her Live-in Shifts could/should be considered compensable, this argument still fails.  Specifically, in order for Plaintiff/any putative class member to be entitled to "spread of hours" pay, they must establish they did not receive their "bona fide sleep/meal periods" and thus worked more than 13 hours of a Live-in Shift sufficient to reduce the amount of pay received for same to a rate at or below minimum wage.  As noted, this individualized inquiry precludes the finding of Commonality/Typicality.  <u>See, e.g.</u>, <u>Severin</u>, 2012 WL 2357410 at *10; <u>Enriquez</u>, 993 F.Supp.2d at 234-36. Thus this portion of the NYLL Class cannot be certified either.[27]

---

[26] The "Spread of Hours" provision requires certain employees be paid  an additional hour of pay at the New-York-State-mandated minimum wage when such employee works a "spread" of hours in excess of ten per day.  <u>See</u> N.Y.C.R.R. §§ 142-3.4, 142-3.16.

[27] Again, to the extent Plaintiff argues this claim is amenable to class-wide treatment because Aides are entitled to pay for all 24 hours of a Live-in Shift regardless under <u>Andryeyeva</u>'s interpretation of the NYLL, such argument

*iv. Wage Notice Claim*

As to this claim concerning True Care's purported failure to provide proper Wage Notices to Plaintiff/putative class members, Defendants categorically refute it.  Indeed, many of the Notices – provided in a good-faith effort to comply with the NYLL – indicate: the <u>minimum</u> rate of pay to which all Aides were entitled; the overtime rate compliant with the Minimum OT Rate then in effect (which is the only overtime rate to which Aides subject to the Companionship exemption were entitled); and that "[a] very limited number of specific categories of employees are covered by overtime at a lower overtime rate or not at all."  <u>See</u> Rand Decl. II Ex. "L"; <u>see also, e.g</u>, Schneider Trans. 152-53; Schneider Decl. ¶¶ 17-21.  Courts find a defendant's good-faith attempt to provide compliant Wage Notices may defeat a plaintiff's claim for violation of the WTPA.  <u>See</u> <u>Cabrera v. Schafer</u>, 2016 WL 6998670, *3-4 (E.D.N.Y. Nov. 28, 2016) (upholding jury verdict finding Defendants' good faith belief concerning compliance with the WTPA because of an exemption sufficient to defeat a claim alleging violation of same).

As such, in order for Plaintiff to certify a class for the Wage Notice Claim, Plaintiff first must establish the Companionship exemption did not apply.  <u>See id.</u> Such argument first requires individualized inquiries pertaining to application of that exemption, which is sufficient to preclude finding Commonality or Typicality regardless.  <u>See supra</u>.  Further, any class premised on WTPA notice violations would require an individualized inquiry regarding, <u>inter alia</u>: (i) whether each individual plaintiff's Wage Notices were compliant; and (ii) whether the individual "plaintiff" was entitled to receive the Wage Notices.  For example, employees hired before April 9, 2011 are not entitled to an NYLL § 195 Wage Notice/damages regarding same.  <u>Franco v. Jubilee First Ave. Corp.</u>, 2016 WL 4487788, *13 (S.D.N.Y. Aug. 25, 2016).  Answers to these

---

relies upon an unresolved issue of state law which requires this Court decline to exercise supplemental jurisdiction over same.  <u>See</u> <u>Seabrook</u>, 153 F.3d at 72.

questions could not occur class-wide and instead require an in-depth review of the information contained on each Wage Notice, and in-depth, individualized analysis into the dates of hire for each class member, as well as an analysis of their duties, hours, schedule and wages.  Such emphasis and reliance upon individualized inquiries, and the inability to determine potential liability with common answers applicable to the class, defies and frustrates the intention and purpose of FRCP 23 and class litigation as a whole, requiring dismissal of the Wage Notice Claim. See Keller v. AXA Equitable Life Ins. Co., 2013 WL 6506259, *7 (S.D.N.Y. Dec. 12, 2013) (denying certification because "whether and to what extent the alleged policy resulted in violations of the [NYLL] is one as to which individualized questions predominate").  Therefore any "common questions" are not susceptible to a "common answer" and thus this claim cannot proceed as a class action.  See Ruiz, 2015 WL 4629444 at *5.

> *v.  WPA Claim*

Relevant to this claim, the WPA requires that, after March 1, 2014, all Aides who provide services in New York City be paid $14.09 per hour in "total compensation."[28]  NY Pub. Health Law § 3614-C.  However, the WPA requires conformity with its wage-rates only when Aides provide services under a "managed care plan" funded in whole or in part by New York Medicaid.  See N.Y. Pub. Health L. § 3614-C(9).  Initially, Plaintiff has not established she personally has a claim pursuant the WPA.  To wit – Plaintiff makes nothing but claims alleged

---

[28] This has been codified to require that the Aides' total pay, when accounting for their actual wage, "accrued leave and wage differential" (essentially an employer's credit for providing paid sick leave or vacations, or premium holiday pay), and benefits must equal or exceed $14.09 per hour.  The minimum base wage has to be at least $10.00 per hour. Accrued leave and wage differential, and benefits can account for the remaining $4.09 per hour of "total compensation."  See the Home Care Worker Wage Parity Act FAQ propounded by the Department of Health (https://www.health.ny.gov/health_care/medicaid/redesign/docs/mrt61_hc_worker_parity_faqs_5_30_14.pdf).

merely "upon information and belief," that New York Medicaid paid for services to certain of the clients she serviced, and that she was not paid required WPA act wages. Shillingford Decl. ¶ 31. This claim is insufficient to establish even a personal violation of the WPA as against Plaintiff, particularly where relevant evidence specifically refutes this specious allegation. See, e.g., Shillingford Trans. 292-93, 302-304; Schneider Trans. 69-74, 107, 110-11; Schneider Decl. ¶¶ 24-29; Shillingford Payroll Records (ER000054, 59, 96) (noting Plaintiff received benefits, vacation pay and "premium" holiday pay consistent with the WPA).

Thus it is evident she cannot establish that her (non-existent) claim is "common" and/or "typical" of the claims of the putative class. Plaintiff's only knowledge concerning putative class members and WPA compliance is limited to unidentified conversations with "other [Aide] employees of Defendants, including Matilda" who (somehow) informed her they knew they were working with a patient where "New York Medicaid" paid for their services. Since Plaintiff still cannot definitively allege she failed to receive wages, "accrued leave" and/or benefits in compliance with the WPA, it is illogical to conclude she had any conversations with other Aides which would indicate they also did not receive such wages, "accrued leave" and/or benefits. See Shillingford Decl. ¶ 33; see also Compl., generally. Further, Plaintiff never identifies the contents of the conversations had with these other Aides, particularly as it relates to the specific amount of pay, leave, and/or benefits received by these other Aides. See id. Moreover, Plaintiff's "knowledge" of a WPA-violative practice is belied by her own deposition testimony, which admits the other Aides with whom she had purported discussions told her they were paid a "flat rate," but does not indicate whether they discussed receipt of "accrued leave" and/or benefits. See Shillingford Trans. p. 287-88, 316-28, 316-28, 331-36.

Indeed, the payroll records Plaintiff claims support her allegations concerning the WPA

Claim simply do not.  Plaintiff speciously alleges that the "paystubs attached demonstrate that Defendants had a policy not to pay home health aides the minimum [WPA] wages."  Rand Decl. II ¶ 52.  However, a review of the paystubs attached refutes this contention, in that, subsequent to March 1, 2014, all Aides identified were paid a wage-rate equal to (or usually above) a minimum of $10.00 per hour when accounting for the fact that such Aides were entitled to pay for only 13 hours of a Live-in Shift.  See Rand Decl. Exs. "A" through "K".  As such these paystubs show Defendants actually did pay the minimum base wage required by the WPA.  See id.  Further, Defendants did comply with the remaining requirements concerning "total compensation" by providing Plaintiff (and other Aides) vacation pay, and premium holiday pay, and by contracting with a third-party to provide required health benefits.  See, e.g. Shillingford Payroll Records (ER000054, 59, 96); Schneider Trans. 69-74, 107, 110-11; Schneider Decl. ¶¶ 24-29, Rand Decl. II Exs. "B" – "G," "I" – "K" (e.g. ER000163, 580, 844, 854, 862, 657, 722, 452, 459, 212-13, 137, 147).  These facts, when taken with Plaintiff's acknowledgement of receipt of premium holiday and vacation pay, preclude a finding that Defendants committed any alleged act violative of the WPA against Plaintiff, let alone "in the same manner against all members of the class." Morangelli v. Hemed Corp., 275 F.R.D. 99, 118 (E.D.N.Y. 2011) (citation omitted).

Even if the above were not true, however, the WPA Claim still cannot satisfy Commonality and Typicality.  The Court would still need to conduct an individualized inquiry concerning applicability of the Companionship exemption for each Aide who performed WPA-relevant services from March 1, 2014 to November 12, 2015, to determine whether True Care was required (and thus purportedly failed) to pay an overtime wage compliant with the WPA (i.e., a minimum of $15.00 per overtime hour).  The Court would also need to conduct an individualized inquiry into whether each putative class member did not receive their "bona fide

sleep/meal periods" (and thus worked more than 13 hours of a Live-in Shift) sufficient to reduce pay actually received to a wage-rate below that required by the WPA.  As noted above, these individualized inquiries eviscerate a finding of Commonality or Typicality.  See, e.g., Severin, 2012 WL 2357410 at *10; Enriquez, 993 F.Supp.2d at 234-36; Callari, 307 F.R.D. at 79.[29]

### D. Adequacy

To satisfy Adequacy, "there should be no conflict between the interests of the class and the named plaintiff."  Jolly Roger Offshore Fund Ltd. v. BKF Capital Grp., Inc., 2007 WL 2363610, *5 (S.D.N.Y. Aug. 16, 2007).  For the reasons noted above, Plaintiff is not an adequate representative.  Indeed, the facts previously discussed and compiled herein present a conflict between her and the remainder of the potential class: (i) she alleges she performed services in conformity with the Companionship exemption when applicable, and thus has not established a right to FLSA-compliant minimum and/or overtime wages during this time; (ii) she has not shown she worked more than 40 hours per week following the inapplicability of the Companionship exemption (after November 12, 2015), and thus has not shown right to overtime at the Regular OT Rate regardless; (iii) she did not work for True Care prior to August 29, 2013, and thus has not established entitlement to overtime at the Minimum OT Rate; (iv) she failed to prove she never received her "bona fide meal/sleep periods", meaning her she cannot sustain "spread of hours," and minimum wage claims; (v) and, Plaintiff actually received wages, "accrued leave" and benefits compliant with the WPA.  Thus, rather than focusing her efforts in this litigation on furthering the class claims, Plaintiff would be required to litigate her highly individualized claims and essentially refute the testimonial and documentary evidence

---

[29] Again, any reliance by Plaintiff on Andryeyeva's proposition that Aides are entitled to pay for all 24 hours of a Live-in Shift regardless to assert amenability to class-wide resolution of this claim also requires this Court decline to exercise supplemental jurisdiction over it nonetheless.  See Seabrook, 153 F.3d at 72.

establishing the above.  Thus Plaintiff cannot be expected to represent the interests of a class for which she is not properly a member and cannot be approved as an adequate class representative.

**E.  Rule 23(b)(3)**

Rule 23(b)(3) requires a two-pronged showing: (i) common legal or factual issues predominate over individual issues ("Predominance"); and (ii) a class action is superior to other methods of adjudication ("Superiority").  FED. R. CIV. P. 23(b)(3).  Predominance allows a class to be certified "only when it would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  Myers, 624 F.3d at 547 (citation omitted).  In order to meet Predominance, "a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject to only individualized proof."  In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 136 (2d Cir. 2001) (citation omitted).  Superiority is found where "potential class members are aggrieved by the same policy."  Schear v. Food Scope Am., Inc., 297 F.R.D. 114, 126 (S.D.N.Y. 2014).  Here, neither requirement is met.

First, individualized inquiries into whether putative class members were subject to the Companionship exemption and/or did not receive their "bona fide sleep/meal periods" are paramount in this action.  Indeed, as noted above, all claims relevant to the NYLL Class require such analysis.  Thus the NYLL Class is not subject to generalized proof.  See, e.g., Severin, 2012 WL 2357410 at *6-7; Enriquez, 993 F.Supp.2d at 234-36.  Finally, given the potential applicability of the Companionship exemption, and the right of True Care to generally pay for only 13 hours of a Live-in Shift, potential class members cannot establish – on a class-wide basis – that they were all aggrieved by True Care's purported failure to pay for all 24 hours of a Live-

in Shift and/or pay minimum wages or overtime.   See, e.g., 29 CFR §§ 552.6, 552.109

(McKinney's 2014); 29 C.F.R. §§ 785.21, 785.22; Keller, 2013 WL 6506259 at *7.   As such,

Plaintiff has failed to meet any of the requirements necessary to sustain the NYLL Class,

requiring her request for its certification be denied.[30]

## CONCLUSION

**WHEREFORE**, Defendants respectfully request the following: (i) Plaintiff's request for

conditional certification of the FLSA Collective be denied; (ii) Plaintiff's request for certification

of the NYLL Class be denied; (iii) to the extent a Notice of Pendency and/or Consent to Become

a Party Plaintiff is required, or to the extent Defendants are required to post a copy of the Notice

of Pendency and/or provide contact information for putative collective members, Defendants be

provided the opportunity to meet and confer with Plaintiff concerning these requirements; and,

(iv) Defendants be granted costs, fees, and disbursements, together with such other and further

relief as the Court deems just and proper.

Dated:          Mineola, New York
                June 1, 2017

                              **MELTZER, LIPPE, GOLDSTEIN &**
                              **BREITSTONE, LLP**
                              Attorney for Defendants
                              190 Willis Avenue
                              Mineola, New York 11751
                              (516)747-0300
                        By: _____**ECF**_____/s/_____
                              Christopher P. Hampton, Esq.

**GERALD C. WATERS, JR., ESQ.**
**LARRY R. MARTINEZ, ESQ.**

---

[30] Plaintiff's counsel (not Plaintiff) alleges that True Care violated the NYLL by purportedly not paying Aides for time traveling between clients.  Rand Decl. II ¶ 39.  However, Plaintiff does not request Class certification of this claim.  See Rand Decl. II; DE 26; Plaintiff's Br.  Even if Plaintiff did, such claim would need to be denied regardless, because Plaintiff never alleges that claim applied to her, and even admits it could not have.  See, e.g., Shillingford Decl.; Compl.; Shillingford Trans. 418-19.  As such, Plaintiff fails to meet the requirements for sustaining a class for such claim.  See Morangelli, 275 F.R.D. at 118.