UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x
ELLA SHILLINGFORD,
Individually and on Behalf of All Other Persons Similarly
Situated,

                                          Plaintiffs,

                     -against-                            **DECLARATION**

                                                            16-CV-06785 (KPF)

ASTRA HOME CARE, INC. d/b/a "True Care Home
Health Care," MICHAEL WERZBERGER, REBECCA
ROSENZWEIG, and JOHN DOES #1-10,

                                          Defendants.
------------------------------------------------------------------------ x

        **YEHUDA SCHNEIDER** declares, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the following is true and correct:

        1.     I am employed by Astra Home Care, Inc. d/b/a True Care Home Health Care ("True Care") as the Director of Payroll. I have held this position since in or around August 2013.

        2.     I submit this declaration in opposition to Plaintiff Ella Shillingford's ("Plaintiff") Motion for Certification of Class and Collective Action ("Plaintiff's Motion").

        3.     This declaration is based on my personal knowledge as well as my review of the books and records of True Care.

**A.    BACKGROUND**

        4.     True Care is a licensed home care agency which generally focuses on providing care to needy clients in the New York metropolitan area.

5. In this regard, True Care offers several services, including but not limited to provision of home health aides (an "Aide"), licensed professional nurses, registered nurses, hospice care, and daytime companions.

6. True Care provides Aides to its patients/clients (a "Patient") on an as-needed basis.

7. In particular, when a Patient is referred to True Care, that Patient's "Plan of Care" is provided as well.

8. As I have been made aware, a Plan of Care is a form prepared by a medical professional which may detail several things, including the exact services a Patient needs, the types and amount of professionals (including Aides) who will provide these services, the types of medications or medical equipment the Patient needs, and the results expected from conformity with the Plan of Care.

9. As I have also been made aware, each Plan of Care is individually tailored to the unique medical needs of the Patient for whom it was prepared. Since the conditions of each Patient (*i.e.* their diagnoses, prognoses, medical limitations, etc.) substantially differ, the requirements listed on each Plan of Care differ substantially as well.

10. With regard to Aides specifically, True Care requires strict conformity with the tasks and items identified on the Plan of Care. Aides employed by True Care must perform all duties listed on their assigned Patient's Plan of Care and/or necessary to ensure the Patient's continued health, and generally are not allowed to perform any other types of duties.

B. **AIDES WHO PERFORM LIVE-IN SHIFTS**

11. At times (and as indicated on their Plan of Care or by their treating physician), True Care is required to provide a Patient with "around-the-clock" services, meaning

Declaration of Yehuda Schneider
May 26, 2017
Page 3 of 7

a single Aide sometimes must remain with the Patient (or at the Patient's residence) for all 24 hours in a day (a "Live-in Shift").

12. As I have been made aware, the law provides that Aides who perform Live-in Shifts are not deemed to be "working" for 11 of the 24 hours of a Live-in Shift so long as the Aide receives three one-hour meal breaks per Live-in Shift and is allowed to sleep for eight hours of that Live-in Shift.

13. Thus, as I have been made aware, True Care can generally legally pay Aides for only 13 hours of a Live-in Shift, so long as the Aide receives their meal breaks and their sleep periods.

14. It is True Care's policy to make all Aides who work Live-in Shifts aware of this policy, in writing.

15. However, it is also True Care's policy to pay an Aide for up to all 24 hours of a Live-in Shift if True Care is made aware that the Aide did not receive their proper sleep or meal breaks.

16. Indeed, there have been many times where I personally adjusted an Aide's pay and paid them for up to all 24 hours of a Live-in Shift after being made aware the Aide did not receive their sleep periods or their meal breaks.

C.  **WAGE THEFT PREVENTION ACT NOTICES**

17. It is my understanding that, when required, True Care provides all Aides a "Wage Theft Prevention Act" Notice (the "Notice") for the Aide's signature and return to True Care. Upon information and belief, each Aide is required to attend an orientation prior to their assignment to a Patient, and the Notice is provided during this orientation.

Declaration of Yehuda Schneider
May 26, 2017
Page 4 of 7

18. While I do not personally administer or maintain these Notices, I have reviewed several Notices in the fulfillment of my duties, including the Notices provided to Plaintiff during the prosecution of the instant matter.

19. My review of the provided Notices show they all contain the minimum rates of pay and overtime to which the Aide was entitled (if any); the designated pay day, the calculation of the hourly rate for each Aide; and the name, address and phone number of True Care's main office

20. Additionally, several note that a very limited number of specific categories of employees are covered by overtime at a lower overtime rate or not at all.

21. With regard to pay, it is True Care's general policy to pay Aides on a weekly basis.

## D. NEW YORK HOME HEALTH CARE WAGE PARITY ACT

22. I am also aware there is a New York state law entitled the New York Home Health Care Wage Parity Act (the "WPA"). As I understand it, this law requires Aides who perform services for Patients who have those services paid/reimbursed in whole or in part by New York Medicaid ("WPA Aides") be compensated a certain minimum amount.

23. Pursuant to this law, beginning on or about March 1, 2014, WPA Aides who provided services for Patients residing in New York City were required to be compensated at the rate of at least $14.09 per hour in "total compensation." As I have been made to understand, "total compensation" in this senses is calculated by including: (1) the actual amount of money a WPA Aide makes per hour (which must have been at least $10.00 per hour in 2014); (2) the value of any paid time off (such as vacation pay or sick pay) received by the Aide; (3) the value of any benefits (such as health insurance, dental insurance, etc.) received by the Aide; and

793450.1

- 4 -

Declaration of Yehuda Schneider
May __26, 2017
Page 5 of 7

(4) the value of any "premium" pay (meaning additional pay above the standard hourly rate) made available to WPA Aides who worked on a holiday such as Memorial Day, Labor Day, Thanksgiving, Christmas, etc.

24. To the extent True Care is required to (i.e. to the extent True Care provides Aides to Patients whose services will be paid/reimbursed in whole or in part by New York Medicaid), True Care ensures compliance with the WPA.

25. For instance, it is True Care's practice to provide its Aides, including WPA Aides, vacation and/or sick pay.

26. Further, it is True Care's practice to pay "premium" pay on the following holidays: New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day and Christmas Day.

27. Additionally, it is True Care's practice to pay all WPA Aides at least the minimum hourly wage required by the WPA as such Aide's direct wages.

28. Finally, with regard to WPA-compliance, True Care contracts with a third-party insurance provider. I forward relevant WPA Aide records to this third-party provider on a regular basis. These records include the amount of actual pay received by the WPA Aide, the amount of hours worked by said Aide, and the extent and amount of vacation/sick pay taken/earned by that WPA Aide. This third-party provider is also aware of the amount and extent of "premium" holiday pay offered by True Care to its WPA Aides.

29. As has been represented to me by this third-party provider, this provider then calculates the aggregate of benefits (in the form of insurance) necessary to be provided to the WPA Aide to satisfy the amount of "total compensation" which remains to be paid to the

Declaration of Yehuda Schneider
May 26, 2017
Page 6 of 7

Aide in order to fulfill the WPA's requirements. Following this calculation, the third-party insurance provider actually provides the benefits owed directly to the WPA Aide.

### E.  PLAINTIFF ELLA SHILLINGFORD

30. As far as I am aware, Plaintiff performed services for True Care as an Aide from on or about June 19, 2014 until on or about January 31, 2016.

31. Upon information and belief, Plaintiff attended the orientation required for all Aides, where she should have received a standard orientation packet, including the Notice.

32. My review of Plaintiff's records show that Plaintiff primarily performed services for Patients whose Plans of Care indicated they needed an Aide to perform Live-in Shifts.

33. As such, the majority of Plaintiff's payroll records indicate payment for Live-in Shifts.

34. Her earlier payroll records indicated, amongst other things, the number of total Live-in Shifts Plaintiff worked; the amount of pay received for each individual Live-in Shift; and the amount of pay received for the entire pay period. Plaintiff's hourly rate could be easily discerned by dividing the amount of pay received for each individual Live-in Shift by 13, which is the number of hours she worked pursuant to relevant law.

35. In contrast, Plaintiff's later payroll records indicated the actual number of hours Plaintiff worked, which was 13 hours, 26 hours, or 39 hours. If the payroll record indicates 13 hours, Plaintiff worked one Live-in Shift during the pay period. If the payroll record indicates 26 hours, Plaintiff worked two Live-in Shifts during the pay period. If the payroll record indicates 39 hours, Plaintiff worked three Live-in Shifts during the pay period.

Declaration of Yehuda Schneider
May __26_, 2017
Page 7 of 7

36. As indicated on the relevant payroll records, each pay period consists of one week.

37. Further, to the extent Plaintiff performed services as a WPA Aide, True Care ensured compliance with the requirements of the WPA to the best of its abilities. Indeed, as is shown on Plaintiff's payroll records, Plaintiff was never paid less than $10.00 per hour for any Live-in Shift she worked. In fact, she was usually paid at least $10.93 per hour ($142.09 per Live-in Shift divided by 13 hours per shift). At times she was even paid as much as $15.00 per hour ($195.00 per Live-in Shift divided by 13 hours per shift). Plaintiff also received vacation pay, and received "premium" pay when she worked on designated holidays.

38. I also personally provided our third-party provider with Plaintiff's WPA-relevant records when necessary. As far as I am aware, Plaintiff was provided the necessary benefits from our third-party provider to ensure her "total compensation" satisfied the amount required by the WPA.

39. Finally, my review of Plaintiff's records shows that Plaintiff only provided services for one patient from November 2015 until January 31, 2016. Specifically, Plaintiff performed services for a patient by the name of Lili H███

Dated:   Brooklyn, New York
         May ___26__, 2017

_____
YEHUDA SCHNEIDER

Sworn to before me this
26th day of May, 2017.

_____
NOTARY

YVONNE BLAISE
Notary Public, State of New York
Qualified in Queens County
No. 01BL4982585
My Commission Expires June 3, 2019