UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------X
                                                     :
ELLA SHILLINGFORD,                                   :
                                                     :
                                Plaintiff,           :
                                                     :
                v.                                   :        16 Civ. 6785 (KPF)
                                                     :
ASTRA HOME CARE, INC. d/b/a                          :        OPINION AND ORDER
TRUE CARE HOME HEALTH CARE,                          :
MICHAEL WERZBERGER, REBECCA                          :
ROSENZWEIG, and JOHN DOES #1-10,                     :
                                                     :
                                Defendants.          :
                                                     :
-----------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: February 23, 2018

KATHERINE POLK FAILLA, District Judge:

     Plaintiff Ella Shillingford brings this action for violations of the Fair Labor

Standards Act (the "FLSA"), 29 U.S.C. §§ 206(a) and 207(a), and the New York

Labor Law, Consol. Laws 1909, ch. 31 (the "NYLL"), against Defendants Astra

Home Care, Inc. d/b/a True Care Home Health Care ("Astra"), Michael

Werzberger, Rebecca Rosenzweig, and several John Does (collectively,

"Defendants").  The gravamen of Plaintiff's complaint is that she often worked

24-hour shifts as a home health care aide without receiving breaks for sleep or

meals and, further, that Defendants improperly counted each 24-hour period

as a single shift (without regard to the number of hours actually worked), for

which Plaintiff was paid a flat fee.  Plaintiff also alleges, more broadly, that she

was not given overtime pay for hours worked in excess of 40 hours in a

workweek; that she did not receive the requisite minimum wage; and that

Defendants did not comply with New York's "spread of hours" requirement, the

New York Wage Parity Act (the "WPA"), or the New York Wage Theft Prevention Act (the "WTPA").

Plaintiff now moves for conditional certification of a collective action under § 216(b) of the FLSA for her overtime and minimum wage claims. Plaintiff also moves under Federal Rule of Civil Procedure 23 to certify several classes under the NYLL. For the reasons that follow, the Court grants Plaintiff's motion for conditional certification, but denies without prejudice Plaintiff's motion for class certification.

## BACKGROUND[1]

### A. Factual Background

#### 1. Plaintiff's Employment at Astra

Plaintiff was a home health care aide ("aide") employed by Astra from June 19, 2014, to January 31, 2016. (Compl. ¶ 20). Plaintiff alleges that she was "not paid full regular wages for all of her hours worked[,] was not paid overtime wages for all of her hours worked over [40] in a workweek ..., and was

---

[1]    This Opinion draws from the Complaint ("Compl." (Dkt. #1)), and the exhibits to the Declarations of William C. Rand, Esq. ("Rand Decl." (Dkt. #35 (redacted))) and Ella Shillingford ("Pl. Decl." (Dkt. #34 (redacted))). At this stage of the litigation, the Court looks primarily to Plaintiff's account of the facts because of her modest burden on a § 216(b) motion. *See Myers* v. *Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (describing the "modest factual showing" needed for a motion for conditional certification). Where Defendants offer contrary facts as to whether Plaintiff is similarly situated to potential opt-in plaintiffs, the Court has noted Defendants' position, but "will grant the plaintiff the benefit of the doubt given the posture of this motion." *Mendoza* v. *Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629 (KPF), 2013 WL 5211839, at *1 n.1 (S.D.N.Y. Sept. 16, 2013) (internal quotation marks and brackets omitted). Thus, to the extent needed, the Court also looks to the exhibits attached to the Declarations of Yehuda Schneider ("Schneider Decl." (Dkt. #36)) and Christopher P. Hampton, Esq. ("Hampton Decl." (Dkt. #37)). For convenience, the Court refers to Plaintiff's opening brief as "Pl. Br." (Dkt. #28); to Defendants' opposition brief as "Def. Opp." (Dkt. #32); and to Plaintiff's reply brief as "Pl. Reply" (Dkt. #38).

not paid an extra hour of pay for all her hours worked over a spread of 10 hours per day." (*Id.* at ¶ 23). Typically, Plaintiff worked

> 24 hour shifts staying overnight at the client's house, and on these days was only paid for 13 hours generally at the rate of $10.93 per hour equal to $142.09 or at the rate of $15 per hour equal to $195, despite the fact that her sleep was regularly interrupted at least 3-4 times by the client throughout the night, causing [Plaintiff] not to get 5 hours of uninterrupted sleep[,]

and despite the fact that Plaintiff often "did not receive a meal break and generally ate while working." (*Id.* at ¶¶ 24, 35). The Complaint recounts Plaintiff's experiences with several clients who would wake her throughout the night to request assistance and would prevent her from taking continuous sleep breaks. (*Id.* at ¶¶ 25-30). Plaintiff states that she "generally worked 4-6 24 hour shifts per week." (*Id.* at ¶ 31). Plaintiff describes herself as a "home health aide/maid" and makes a variety of allegations about performing household work, such as "dusting, vacuuming, cleaning the bathroom … mopping the kitchen floors, scrubbing the kitchen counters, cleaning the pots and pans, loading/unloading the dishwasher, feeding and taking care of cats, and taking out the garbage." (*Id.* at ¶¶ 20-45).

### 2. Plaintiff's Collective Claims

In support of her collective claims, Plaintiff submitted a declaration that largely tracks the allegations made in her Complaint regarding her own experiences while employed by Defendants. (*See generally* Pl. Decl.). When speaking about other aides, however, Plaintiff often speaks in conclusory terms — asserting, for example, that Defendants employ at least 40 other home

health aides who were similarly not paid overtime and only compensated for 13 hours of their 24-hour shifts. (*Id.* at ¶¶ 28, 30). Plaintiff identifies in her declaration one other aide, Matilda, who also claims that she was only paid 13 hours for a 24-hour shift when she did not receive five hours of uninterrupted sleep time. (*Id.* at ¶ 33). Matilda is further alleged to have told Plaintiff that she (Matilda) was not paid any premium for working more than 40 hours per week and did not receive WPA wages. (*Id.*).

During her deposition, Plaintiff identified two other aides with whom she had spoken about their experiences. (Dkt. #37-4 ("Pl. Dep.")). *First*, Plaintiff spoke to an aide named Katy during "in-service training," who told Plaintiff that she had only been paid for 13 hours of a 24-hour overnight shift in which she had not been able to get five uninterrupted hours of sleep. (Pl. Dep. 322:13-323:7). *Second*, Plaintiff mentioned that she spoke to an aide named Maranga. (*Id.* at 402:6-10). The excerpts of the deposition provided to the Court do not include the substance of Plaintiff's discussions with Maranga, and the Court is thus unable to find that Plaintiff is similarly situated to her. Even crediting the additional statements Plaintiff made during her deposition, the Court finds that this evidence is not, on its own, enough to sustain Plaintiff's collective claims.

More persuasive is the documentary payroll evidence Plaintiff obtained during discovery and submitted with her attorney's supporting declaration. Plaintiff's pay stubs reflect several categories of compensation: (i) Astra InService, (ii) live in, (iii) regular, (iv) overtime, (v) holiday, and (vi) vacation. (Rand Decl., Ex. A). Several of her pay stubs list only "live in" compensation;

on these pay stubs, the "hours" column reflects between four and six "hours" of work compensated at a flat rate of $142.09 per "hour" (*id.*); the Court understands from the oral argument in this matter that the references to "hours" in the live-in payment context are payroll record idiosyncrasies that were fixed sometime in late 2015 or early 2016, and that the $142.09 figure is in fact payment for a 13-hour shift. (*See* Dkt. #42 ("Oral Arg. Tr.") 8:7-17, 20:14-18, 28:23-29:4). Certain other pay stubs reflect multiple forms of compensation. For example, from September 6-12, 2014, Plaintiff worked 40 hours of "regular" time (compensated at $15 per hour), eight hours of "overtime" (compensated at $22.50 per hour), and two "hours" of "live in" time (which, again, the Court understands to reflect two shifts compensated at $195.00 per shift). (Rand Decl., Ex. A). Plaintiff submitted payroll documents for 10 other aides. (*Id.* at Ex. B-K). Each set of pay stubs reveals instances of aides working live-in shifts for no more than seven "hours" per week for which they were compensated a flat fee. (*Id.*). Several were compensated at the same rate as Plaintiffs — $142.09 per shift. (*E.g.*, Rand Decl. Ex. B, D, E, F, I).[2]

---

[2]    The pay stubs for the comparators appear in a different format than Plaintiff's and contain different compensation designations. In his deposition, Yehuda Schneider, Astra's director of payroll, confirmed that the code "AUNIT" denotes a live-in shift, "AOT" is overtime pay, and "REG" is regular (non-overtime) pay. (Rand Decl., Ex. M at 106:18-107:11).

**B.    Procedural Background**

Plaintiff filed this suit on August 29, 2016 (Dkt. #1), and Defendants filed their Answer on October 7, 2016 (Dkt. #13).  On January 11, 2017, the Court granted in part Plaintiff's motion for discovery related to her class and collective action claims.  (Dkt. #15, 20).  The Court ordered Defendants to produce "(i) the name and contact information and (ii) the wage and hour information of two randomly selected home health aide employees for each of the six years that Plaintiff was allegedly employed by Defendants, resulting in the sampling of twelve aides." (Dkt. #20).  The parties completed collective and class discovery on March 30, 2017 (Dkt. #25), and on May 2, 2017, Plaintiff moved for conditional certification of a collective action under 29 U.S.C. § 216(b) and to certify several classes under Federal Rule of Civil Procedure 23 (Dkt. #26-28).  Defendants filed their opposition on June 1, 2017.  (Dkt. #32).  Plaintiff filed her reply brief on June 15, 2017.  (Dkt. #38).  The unredacted Declaration of Ella Shillingford and Exhibits B through M of the Declaration of William C. Rand, Esq. were filed under seal, but redacted versions are on the docket at Docket Entries 34 and 35.

On January 4, 2018, the Court ordered the parties to appear for oral argument to discuss certain concerns about the record on Plaintiff's collective claims.  (Dkt. #41).  The Court held oral argument on January 12, 2018, and the Court's resolution of this motion benefitted greatly from the capable advocacy on both sides.  (*See* Dkt. #42 (transcript)).

**DISCUSSION**

**A.    Applicable Law**

**1.    Collective Certification Under § 216(b) of the FLSA**

The FLSA provides for common resolution of wage and hour claims. Under 29 U.S.C. § 216(b), a claim can be brought against an employer "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." Unlike class actions brought under Rule 23, FLSA collective actions "need not satisfy the standards of numerosity, typicality, commonality, or representativeness." *Mendoza* v. *Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629 (KPF), 2013 WL 5211839, at *2 (S.D.N.Y. Sept. 16, 2013) (citing *Young* v. *Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005)).

District courts in the Second Circuit apply a two-step process when presented with an application for certification of a collective action under § 216(b).[3] *First*, courts consider "whether to send notice to potential opt-in plaintiffs who may be similarly situated to the named plaintiffs with respect to whether an FLSA violation has occurred." *Morano* v. *Intercontinental Capital Grp., Inc.*, No. 10 Civ. 2192 (KBF), 2012 WL 2952893, at *4-5 (S.D.N.Y. July 17, 2012) (internal quotation marks and citation omitted). *Second,* the collective action may be de-certified if the record reflects that the opt-in plaintiffs are not, in fact, similarly situated. *Myers* v. *Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010).

---

[3]    "Although the FLSA does not contain a class certification requirement, such orders are often referred to in terms of 'certifying a class.'" *Bifulco* v. *Mortg. Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009) (internal quotation marks and citation omitted).

To clear the first hurdle of collective action certification, FLSA plaintiffs must make a "modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." *Myers*, 624 F.3d at 555 (internal quotation marks omitted). "Accordingly, an FLSA collective action may be conditionally certified upon even a single plaintiff's affidavit." *Escobar* v. *Motorino E. Vill. Inc.*, No. 14 Civ. 6760 (KPF), 2015 WL 4726871, at *2 (S.D.N.Y. Aug. 10, 2015) (collecting cases). But this modest burden is "not non-existent" and Plaintiff's showing "must still be based on some substance." *Guillen* v. *Marshalls of MA, Inc.*, 750 F. Supp. 2d 469, 480 (S.D.N.Y. 2010); *see also Reyes* v. *Nidaja, LLC*, No. 14 Civ. 9812 (RWS), 2015 WL 4622587, at *2 (S.D.N.Y. Aug. 3, 2015) ("conclusory allegations will not suffice"). "[I]n deciding whether to grant [a plaintiff's] motion, the Court must merely find 'some identifiable factual nexus which binds the named plaintiffs and potential class members together as victims' of a particular practice." *Alvarez* v. *Schnipper Restaurants LLC*, No. 16 Civ. 5779 (ER), 2017 WL 6375793, at *2 (S.D.N.Y. Dec. 12, 2017) (quoting *Guzelgurgenli* v. *Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 346 (E.D.N.Y. 2012)). At this stage, the Court ought not "resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Hypolite* v. *Health Care Servs. of N.Y., Inc.*, 256 F. Supp. 3d 485, 489 (S.D.N.Y. 2017) (internal quotation marks and citation omitted).

## 2. Class Certification Under Federal Rule of Civil Procedure 23

"[A] district judge may not certify a class without making a ruling that each Rule 23 requirement is met[.]" *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 27 (2d Cir. 2006). Rule 23 requires a plaintiff to establish, first, that:

> [i] the class is so numerous that joinder of all members is impracticable; [ii] there are questions of law or fact common to the class; [iii] the claims or defenses of the representative parties are typical of the claims or defenses of the class; and [iv] the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These requirements are commonly referred to as numerosity, commonality, typicality, and adequacy. *Ruiz* v. *Citibank, N.A.*, 93 F. Supp. 3d 279, 287 (S.D.N.Y. 2015). As the Supreme Court observed in *Wal-Mart Stores, Inc.* v. *Dukes*, "[w]hat matters to class certification … is not the raising of common questions — even in droves — but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." 564 U.S. 338, 350 (2011) (internal quotation marks and citation omitted).

If a plaintiff meets the threshold requirements of Rule 23(a), she must also establish that the proposed class falls into one of the three categories set forth at Rule 23(b). Here, Plaintiff seeks to certify five classes under Rule 23(b)(3), which permits a class action to proceed if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the

9

controversy." Fed. R. Civ. P. 23(b)(3).  Plaintiff must establish the Rule 23 requirements by a preponderance of the evidence.  *Pa. Pub. Sch. Emps.' Ret. Sys.* v. *Morgan Stanley & Co.*, 772 F.3d 111, 119 (2d Cir. 2014).  "In other words, the district judge must 'receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met.'"  *Severin* v. *Project OHR, Inc.*, No. 10 Civ. 9696 (DLC), 2012 WL 2357410, at *4 (S.D.N.Y. June 20, 2012) (citing *Teamsters Local 445 Freight Div. Pension Fund* v. *Bombardier, Inc.*, 546 F.3d 196, 204 (2d Cir. 2008)).  A court considering an application under Rule 23 "may make findings with respect to 'whatever underlying facts are relevant to a particular Rule 23 requirement'" and may weigh conflicting evidence to make such findings. *Damassia* v. *Duane Reade, Inc.*, 250 F.R.D. 152, 155 (S.D.N.Y. 2008) (citation omitted).  Any fact-finding "'is not binding on the trier of facts' on the merits, 'even if that trier is the class certification judge.'"  *Id.* (citation omitted).

**B.      Analysis**

**1.      Plaintiff's Motion for Conditional Certification**

The FLSA establishes a minimum wage and overtime pay rate. Employers are required to pay at least a minimum wage for each of the first 40 hours worked in a workweek and, for each hour over 40, must pay employees overtime "at a rate not less than one and one-half times the regular rate at which [they are] employed."  29 U.S.C. §§ 206-207.  Plaintiff alleges violations of both the minimum wage and overtime requirements, and asks the Court to conditionally certify a collective action under the FLSA consisting of:

> [A]ll current and former employees of Defendants [ ]who
> are or were formerly employed by Defendants as home
> health aides at any time since August 29, 2013 to the
> entry of judgment in this case … who were non-exempt
> employees within the meaning of the FLSA, who were
> not paid minimum wages and/or overtime
> compensation at rates not less than one and one-half
> times their regular rate of pay for hours worked in
> excess of [] 40 hours per workweek[.]

(Dkt. #27-1). As the Court indicated in its January 4, 2018 Order and at oral argument, certification of a collective action of "all current and former … home health aides" is a bridge too far. (Dkt. #41; *see also* Oral Arg. Tr. 9:7-11; 26:9-24). The Court grants conditional certification for home health care aides who predominately worked live-in shifts for Astra after January 1, 2015, and who did not receive adequate overtime.

### a. The FLSA Companionship Exemption

Plaintiff cannot show that she was similarly situated to other aides prior to January 1, 2015. Until 2015, the FLSA expressly exempted individuals "employed in domestic service … to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves[.]" *Hypolite*, 256 F. Supp. 3d at 491 (quoting 29 U.S.C. § 213(a)(15)). Under this provision, home health care aides, including those employed by third-party agencies like Astra, were exempt from the operation of the FLSA unless they could prove that more than 20% of their working time was spent performing general household work. *Id.* On October 1, 2013, the United States Department of Labor narrowed the companionship exemption to exclude aides employed by third-party agencies, thereby bringing such aides

within the ambit of the FLSA. Application of the Fair Labor Standards Act to Domestic Service, 78 Fed. Reg. 60,454 (Oct. 1, 2013) (codified at 29 C.F.R. pt. 552); *see also* 29 C.F.R. § 552.109 (2015).

As explained in the Court's January 4, 2018 Order, the Court adopts the reasoning of other courts in this Circuit to consider the issue and finds that this amendment took effect on January 1, 2015. *See, e.g.*, *Rodriguez de Carrasco* v. *Life Care Servs., Inc.*, No. 17 Civ. 5617 (KBF), 2017 WL 6403521, at *5 (S.D.N.Y. Dec. 15, 2017); *Hypolite*, 256 F. Supp. 3d at 491-94; *Green* v. *Humana at Home, Inc.*, No. 16 Civ. 7586 (AJN), 2017 U.S. Dist. LEXIS 162961, at *16 (S.D.N.Y. Sept. 29, 2017). At oral argument, Plaintiff's counsel agreed with the Court that Plaintiff can only make the required showing under § 216(b) from January 1, 2015, forward. (Oral Arg. Tr. 6:17-22). Accordingly, the Court will only certify a FLSA collective action from January 1, 2015, through the present.

### b. FLSA Overtime Collective

Plaintiff has met her minimal burden to establish that she is similarly situated to other aides at Astra who routinely worked 24-hour live-in shifts after January 1, 2015, but who were not paid overtime. To review, the FLSA requires that employees be paid overtime for hours worked over 40 in a workweek. 29 U.S.C. § 207. Under 29 C.F.R. § 785.22, employers may deduct "bona fide meal periods and a bona fide regularly scheduled sleeping period" from the count of compensable hours for employees who work 24-hour shifts if (i) that employee has a scheduled sleep break of no more than eight hours, and

(ii) the employee actually receives five uninterrupted hours of sleep. Plaintiff's declaration and deposition coupled with the payroll evidence show that Plaintiff and other similarly situated aides who worked live-in shifts were victims of a common policy wherein they received pay stubs that represented each live-in shift as one hour and were not compensated adequately for these overnight shifts *even if* they received bona fide sleep and meal breaks — which, Plaintiff alleges, they did not.

Two examples are illustrative: *First*, Plaintiff's pay stub for the week of June 13-19, 2015, shows that Plaintiff was compensated for four "hours" (i.e., shifts) of live-in time at a rate of $142.09 per shift. (Rand Decl., Ex. A). Assuming Plaintiff received an eight-hour sleep break and a one-hour break for each meal of the day, Astra would be entitled under the FLSA to deduct 11 hours from each of Plaintiff's four 24-hour shifts, leaving a total of 52 compensable hours for these four shifts combined. *See* 29 C.F.R. § 785.22. Plaintiff's pay stub indicates that her pay rate is $10.00. (Rand Decl., Ex. A). Assuming she would be paid $10.00 per hour for each of the first 40 hours worked that week, and $15.00 per hour for each of the 12 hours worked that week over 40 hours, Plaintiff would be entitled to receive $580 in gross pay for the week, but she was only paid $568.36. (*Id.*). *Second*, the pay stub for aide E.C.[4] for the pay period ending on May 22, 2015, shows that E.C. was similarly compensated for six "hours" (i.e., shifts) of live-in time at a rate of $142.09 per shift. (Rand Decl., Ex. I). As was the case with Plaintiff, Astra would be

---

[4] The Court refers to aides other than Plaintiff by their initials or first names.

entitled to deduct 11 hours per shift, assuming that E.C. received sleep and meal breaks. On that assumption (and assuming further that she similarly earned a base rate of $10 per hour), she would have been entitled to $970.00 gross pay for the week, but she was only paid $852.54. (*Id.*). E.C.'s pay stubs show that she, too, often worked live-in shifts. (*Id.*).

These two examples speak to the existence of a common policy of underpaying overtime *even if* aides received the bona fide breaks needed to entitle Defendants to deduct sleep and meal time from the aides' count of compensable hours. These records, coupled with the allegations in Plaintiff's declaration and deposition that she and other aides were routinely unable to take breaks for meals and did not receive five uninterrupted hours of sleep as required by the FLSA, demonstrate the existence of a common policy sufficient to satisfy the "low standard of proof" needed to conditionally certify a collective action. *Myers*, 624 F.3d at 555; *see also Rodriguez de Carrasco*, 2017 WL 6403521, at *8 (certifying an FLSA collective action of home health care aides not properly compensated for live-in shifts); *Hypolite*, 256 F. Supp. 3d at 496 (same).

What the payroll records also show, however, is that Astra's aides had a variety of different work schedule arrangements. While Plaintiff spent the majority of her time working at Astra in live-in 24-hour shifts, it is clear that there are aides who did not work live-in shifts at all or for whom these shifts were a small portion of their working time. (*Compare* Rand Decl., Ex. A-C, *with* Rand Decl., Ex. G-H). Moreover, the Court learned at oral argument that about

85% of aides employed by Astra work no live-in shifts.  (Oral Arg. Tr. 22:19-24:4).  Because Plaintiff's claim centers on the compensation for her overnight shifts, the Court cannot find that she has shown that she is similarly situated to aides who did not also spend the majority of their time in live-in shifts.  *See Alvarez*, 2017 WL 6375793, at *4-5 (certifying a collective action, limited to only those employees with similar responsibilities to the plaintiff); *Galindo* v. *East Cty. Louth Inc.*, No. 16 Civ. 9149 (KPF), 2017 WL 5195237, at *5 (S.D.N.Y. Nov. 9, 2017) (finding problematic that plaintiff did not allege similarity with workers in other roles or who worked at other locations); *Martinez* v. *Zero Otto Nove Inc.*, No. 15 Civ. 899 (ER), 2016 WL 3554992, at *4 (S.D.N.Y. June 23, 2016) (denying conditional certification where record lacked sufficient allegations to support a finding that plaintiff was similarly situated to all other employees in proposed collective action); *Guo* v. *Tommy's Sushi Inc.*, No. 14 Civ. 3964 (PAE), 2014 WL 5314822, at *3-4 (S.D.N.Y. Oct. 16, 2014) (granting conditional certification only as to employees in the same role as the named plaintiff).  Thus, the Court will limit the collective action to aides who worked live-in shifts during 50% or more of the weeks that they were on Astra's payroll.

Defendants' arguments against conditional certification are not persuasive.  Defendants do not address the fact that the records demonstrate a failure to pay overtime even if Astra properly deducted all bona fide break periods.  Rather, Defendants argue that Plaintiff has "failed to establish that she never received her 'bona fide sleep/meal periods'" — that the record and logic belie her claim that she never received any breaks during any of her 24-

hour shifts. (Def. Opp. 13-14). Defendants overstate matters. Plaintiff alleges that her sleep was "regularly interrupted generally at least 3-4 times by the client throughout the night" and that she "generally ate while working." (Pl. Decl. ¶¶ 5, 14). She does not claim that she never received a break to sleep or eat. (*See, e.g.*, *id*; Pl. Dep. 197:17-20, 213:8-25, 235:24-236:15). Defendants next argue that Plaintiff did not work more than 40 hours per workweek as of late 2015; that she was thus was not entitled to overtime pay; and that she is therefore not similarly situated to those who are. (Def. Opp. 14). But this point does little to undercut Plaintiff's evidence showing that she was, at least for a time, entitled to overtime pay and is similarly situated to other aides who were denied overtime for live-in shifts and were thus victims of a common policy.

Finally, Defendants argue that "Plaintiff could not provide a single relevant factual detail as to her purported conversations with other [a]ides which would corroborate her allegations," and that the Court should deny the motion given this "startling lack of detail." (Def. Opp. 15-16). Again, Defendants' dramatic language falls short. Plaintiff's burden at this stage is minimal, and she has met it for the reasons set forth above. *Mendoza*, 2013 WL 5211839, at *3 ("The purpose of this first stage is merely to determine *whether* similarly situated plaintiffs do in fact exist." (internal quotation marks and alterations omitted)). Because the Court is persuaded that Plaintiff has met her modest burden on conditional certification, the Court conditionally certifies a collective action of home health care aides who (i) worked for Astra

16

from January 1, 2015, to present, (ii) worked live-in shifts in 50% or more of the weeks that they were on Astra's payroll, and (iii) were not paid adequate overtime.[5]

### c. FLSA Minimum Wage Collective

Plaintiff has also shown a common policy or plan that violated the FLSA minimum wage provision sufficient to warrant conditional certification. *Myers*, 624 F.3d at 555. Plaintiff seeks certification for "all current and former employees of Defendants who are or were formerly employed by Defendants as home health aides … who were non-exempt employees within the meaning of the FLSA, [and] who were not paid minimum wages." (Dkt. #27-1). To be clear, Plaintiff's submissions in support of her motion do little to support her minimum wage claim under the FLSA. Plaintiff's brief makes no more than a passing reference to her minimum wage claims, choosing instead to devote much of its substance to her overtime claims. (*See* Pl. Br. 8-9). And her

---

[5]      A brief word is in order about the time period for the overtime collective action. The Court's review of Astra's payroll records reveals that, beginning in late 2015 or early 2016, Astra changed the way it recorded live-in shifts on pay stubs. Plaintiff noted as much at oral argument. (Oral Arg. Tr. 7:1-13). From that time period forward, Astra appears to have counted each live-in shift as a set of 13 hours, rather than a single hour. (*See, e.g.*, Rand Decl., Ex. E). At oral argument before the Court, Defendants' counsel argued that the payroll records "refute" Plaintiff's allegations because these records show that Astra's employees were paid the proper rates of overtime pay. (Oral Arg. Tr. 17:5-15). Yehuda Schneider, Astra's director of payroll, stated during his deposition that beginning in the latter part of 2015, Astra began to pay overtime to aides who performed live-in shifts. (Schneider Dep. 66:14-68:21). Defendants did not brief this issue, however, and the Court is reluctant to delve too deeply into the merits, which are not ripe for resolution. More to the point, the Court is not persuaded that this evidence is sufficient to warrant cutting off the collective action period on a particular date. *See Hypolite* v. *Health Care Servs. of N.Y. Inc.*, 256 F. Supp. 3d 485, 496 (S.D.N.Y. 2017) (cutting off collective action period after time at which parties agreed the defendants cured their FLSA violations). It is not clear exactly when or how Astra's policy changed, and thus the Court is persuaded — at least for purposes of the instant motion — that Plaintiff has shown a common policy of underpaying overtime for live-in shifts during the time period January 1, 2015, to the present.

declaration makes but one cursory reference to her FLSA minimum wage claims. (Pl. Decl. ¶ 15). The payroll records do not evidence a violation of the FLSA minimum wage provision. In the time period at issue (January 1, 2015, to present), the federal minimum wage was $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). Take, for example, Plaintiff's pay stub for the week of June 13-19, 2015. (Rand Decl., Ex. A). Plaintiff worked four live-in shifts and was paid $142.09 per shift, or an average of $10.93 per hour (assuming she worked only 13 compensable hours), thus reflecting that her hourly compensation was well above the federal minimum wage. (*Id.*).

But at oral argument, Plaintiff's counsel encouraged the Court to credit Plaintiff's allegations that she rarely received meal breaks or five uninterrupted hours of sleep such that Astra would have to compensate her for the full 24 hours, and argued further that the Court would then find that Plaintiff was paid, on average, $5.92 per hour and did not receive a minimum wage. (Oral Arg. Tr. 36:23-37:13). The Court does credit this allegation as to Plaintiff herself and as to the aide who told Plaintiff that she, too, did not receive five uninterrupted hours of sleep. If Plaintiff and the opt-in plaintiffs did not receive five uninterrupted hours of sleep, Astra would be obligated by federal regulation to count all eight hours of their unattained sleep break as compensable time. 29 C.F.R. § 785.22. Returning to the prior example, Plaintiff would be entitled to compensation for 21 hours, and her average pay would drop to $6.77 per hour — below the federal minimum wage. While the Court expressed skepticism about the strength of the record based on

Plaintiff's declaration and deposition alone (i.e., absent documentary support), it finds that Plaintiff has just cleared the hurdle of showing that she and other aides who worked live-in shifts were victims of a common policy that violated the minimum wage provision of the FLSA. Accordingly, the Court conditionally certifies a collective action of home health care aides who (i) worked for Astra from January 1, 2015, to the present, (ii) worked live-in shifts during 50% or more of the weeks that they were on Astra's payroll, and (iii) were not paid a minimum wage.

### 2. Plaintiff's Motion for Class Certification Under Rule 23

Plaintiff moves to certify five classes under the NYLL, consisting of "all current and former employees of Defendants [ ] who are or were employed by Defendants as home health aides," who were not paid (i) minimum wages; (ii) overtime compensation at a rate of at least one and one-half times their regular rate of pay for hours worked in excess of 40 hours per workweek; (iii) minimum wages under the WPA; (iv) a "spread of hours" premium; and (v) who were not given proper notices under the WTPA. (Dkt. #27-1). As discussed at oral argument, there is scant record evidence as to the latter three proposed classes (*see* Oral Arg. Tr. 9:7-20), and certainly not enough to meet the requirements of Rule 23. Plaintiff's motions to certify classes of employees who were allegedly not paid proper WPA wages, spread of hours wages, or who were not given proper notice under the WTPA are all denied without prejudice. The Court will consider, however, Plaintiff's motions to certify classes of aides

who were not paid overtime wages or minimum wages as required under the NYLL.

Before delving into the Rule 23 requirements for class certification, the Court must address a very recent and unsettled development in the NYLL that has unfolded since this motion was filed. There has emerged a split between state and federal courts in New York on the question of whether the NYLL incorporates the FLSA's treatment of bona fide sleep and meal breaks as non-compensable time. NYLL § 652 imposes a minimum wage. As of December 31, 2017, every large employer — defined as an employer with 11 or more employees — must pay a minimum wage of $13 per hour "for each hour worked in the city of New York." N.Y. Lab. Law § 652(1)(a)(i). The regulation implementing the minimum wage law provides:

> The minimum wage shall be paid for the time an employee is permitted to work, or is required to be available for work at a place prescribed by the employer[.] ... However, a residential employee — one who lives on the premises of the employer — shall not be deemed to be permitted to work or required to be available for work: (1) during his or her normal sleeping hours solely because he is required to be on call during such hours; or (2) at any other time when he or she is free to leave the place of employment.

12 N.Y.C.R.R. § 142-2.1(b). New York regulations also require that employees be paid overtime, though the quantum of overtime due depends on whether the employee is covered by the FLSA: Those who are so covered must receive overtime pay at the rate of one and one-half times their regular rate of pay while employees who are exempt from the FLSA need only receive overtime at the rate of one and one-half times the minimum wage. *Id.* § 142-2.2. As with

the minimum wage regulation, the overtime regulation also differs based on whether an employee is "residential":  Those who are residential become eligible for overtime after 44 hours worked in a workweek, whereas those who are non-residential become eligible for overtime after 40 hours worked in a workweek. *Id.*

The New York Department of Labor (the "NYDOL") has interpreted its minimum wage regulation as incorporating the FLSA's approach to sleep and meal breaks for "live-in employees."  Counsel Opinion Letter, N.Y. Dep't of Labor, RO-09-00169 (March 11, 2010), *available at* http://labor.ny.gov/ legal/counsel-opinion-letters.shtm.  In 2010, the NYDOL was asked to answer the question:  "Under New York State law, if a home health care aide 'lives in,' what hours count towards calculating a ten hour day?"  *Id.* at 3.  It responded that the answer turned on the difference between "on call" and "subject to call." *Id.*  Employees are "on call" when they are "required to remain at the prescribed workroom or workplace," whereas employees are "subject to call" when they are "permitted to leave the workroom or workplace between work assignments to engage in personal pursuits or activities."  *Id.*  The NYDOL added, further, that "'residential employees' … who live on the premises of their employer" are not considered to be working during sleeping hours or any other time the employee is free to leave.  *Id.* at 4.  Finally, the NYDOL stated:

> [I]t is the opinion and policy of this Department that live-in employees must be paid not less than for thirteen hours per twenty-four hour period provided that they are afforded at least eight hours for sleep and actually receive five hours of uninterrupted sleep, and that they are afforded three hours for meals.

*Id.* Of note, the entity that requested this guidance did not give the NYDOL enough information about its employees for the NYDOL to determine whether the entity's employees were "residential." *Id.* Nevertheless, the NYDOL noted that it "applies the same test for determining the number of hours worked by all live-in employees." *Id.*

New York courts have been skeptical of the NYDOL's guidance from the beginning. The first state court to consider this issue, albeit briefly, described the NYDOL's opinion letter as "ambiguous, at best" and found that the NYDOL's guidance did not preclude the plaintiff's NYLL claims for underpayment of 24-hour shifts. *See Kodirov* v. *Cmty. Home Care Referral Serv., Inc.*, 951 N.Y.S. 2d 86 (Table), 2012 WL 1605258, at *1 (Sup. Ct. May 8, 2012). A few weeks later, the first federal court to consider the issue took the opposite stance and found that the NYDOL's opinion letter was entitled to deference. *Severin*, 2012 WL 2357410, at *8-10. Accordingly, the court held that the defendant home health aide agency was permitted to deduct bona fide sleep and meal time from the count of compensable hours. *Id.* at *10. The *Severin* court denied certification of a class alleging NYLL minimum wage violations because the plaintiffs had not shown a violation of New York's minimum wage requirements in light of the NYDOL's interpretation. *Id.* at *10.

Since *Severin*, New York courts have continued to hold that the NYDOL's opinion letter is squarely at odds with the plain text of the minimum wage regulation at 12 N.Y.C.R.R. § 142-2.1(b). *See, e.g.*, *Andryeyeva* v. *N.Y. Health Care, Inc.*, 61 N.Y.S.3d 280, 282 (2d Dep't 2017) ("*Andryeyeva II*"); *Moreno* v.

*Future Care Health Servs., Inc.*, 61 N.Y.S.3d 589, 591 (2d Dep't 2017);

*Tokhtaman* v. *Human Care, LLC*, 52 N.Y.S.3d 89, 91 (1st Dep't 2017); *Lai Chan*

v. *Chinese-Am. Planning Council Home Attendant Program, Inc.*, 21 N.Y.S.3d

814, 826-28 (N.Y. Cty. Sup. Ct. 2015); *Andryeyeva* v. *N.Y. Health Care, Inc.*,

994 N.Y.S.2d 278, 285-86 (Kings Cty. Sup. Ct. 2014) ("*Andryeyeva I*"). The

Court's research has not revealed a single New York state case in which a trial

court deferred to the NYDOL's interpretation of the minimum wage regulation

and was not thereafter reversed on appeal. *See, e.g.*, *Moreno* v. *Future Care*

*Health Servs.*, No. 500569/13, 2015 WL 1969753 (Kings Cty. Sup. Ct. 2015),

*rev'd*, 61 N.Y.S.3d 589, 591 (2d Dep't 2017).

These state courts have reasoned that the NYDOL's 2010 interpretive

guidance was unreasonable and not entitled to deference because it conflicted

with the plain meaning of the regulation. In *Lai Chan*, the Supreme Court, New

York County, reasoned that the home health aide plaintiffs did not live in the

homes of their employers, and were thus not covered by the NYDOL's guidance

that addressed only residential employees. 21 N.Y.S.3d at 827-28 ("As pointed

out by plaintiffs, they allegedly maintain their own residences and do *not* live in

the home of defendant."). The First Department built on this reasoning in

*Tokhtaman* and took issue with the fact that the "DOL opinion … fails to

distinguish between 'residential' and 'nonresidential' employees, and should

thus not be followed in this respect." 52 N.Y.S.3d at 91. The *Tokhtaman* court

held that if the plaintiff could show that she was a non-residential employee —

and thus not an employee for whom sleep and meal time could be deducted —

"she may recover unpaid wages for the hours worked in excess of 13 hours a day." *Id.* On this basis, the court denied the defendants' motion to dismiss. *Id.* This reasoning also prevailed in the *Moreno* and *Andryeyeva II* decisions that were issued simultaneously several months later by the Second Department. *Moreno*, 61 N.Y.S.3d at 591 ("To the extent that the [NY]DOL's opinion letter fails to distinguish between 'residential' and nonresidential employees, it conflicts with the plain meaning of 12 [N.Y.C.R.R. §] 142-2.1(b). … To the extent that the members of the proposed class were not 'residential' employees who 'lived' on the premises of their employer, they were entitled to be paid the minimum wage for all 24 hours of their shifts, regardless of whether they were afforded opportunities for sleep and meals."); *Andryeyeva II*, 61 N.Y.S.3d at 282-83 (same).

At the same time, federal courts in New York have continued to defer to the NYDOL. *See, e.g.*, *Rodriguez de Carrasco*, 2017 WL 6403521, at *6-7; *Bonn-Wittingham* v. *Project O.H.R., Inc.*, No. 16 Civ. 541 (ARR), 2017 WL 2178426, at *2-3 (E.D.N.Y. May 17, 2017). In *Bonn-Wittingham*, Judge Ross held on a motion for reconsideration that she was not bound to follow the First Department's holding in *Tokhtaman* and, further, that the New York Court of Appeals was "not likely to follow *Tokhtaman*." 2017 WL 2178426, at *2. Judge Ross reaffirmed her holding that the NYDOL's 2010 letter was entitled to deference and held that the NYDOL was reasonable in its decision to treat home health aides as "live-in" employees for whom their employer could deduct sleep and meal breaks. *Id.* at *3. In *Rodriguez de Carrasco*, Judge Forrest

echoed Judge Ross's reasoning and similarly held that the NYDOL's letter was entitled to deference. 2017 WL 6403521, at *6. Judge Forrest's reasoning was bolstered, additionally, by an emergency regulation promulgated by the NYDOL on October 6, 2017, apparently in response to the spate of state cases disregarding its 2010 guidance. *See id.* at *6-7. The NYDOL amended the minimum wage regulation to add:

> Notwithstanding the above, this subdivision shall not be construed to require that the minimum wage be paid for meal periods and sleep times that are excluded from hours worked under the Fair Labor Standards Act of 1938, as amended, in accordance with sections 785.19 and 785.22 of 29 C.F.R. for a home care aide who works a shift of 24 hours or more.

12 N.Y.C.R.R. § 142-2.1(b). The NYDOL explained that the amendment was "necessary to preserve the status quo, prevent the collapse of the home care industry, and avoid institutionalizing patients who would be cared for at home, in the face of recent decisions by the State Appellate Divisions[.]" 10/25/17 N.Y. St. Reg. LAB-43-17-00002-E.

The Court discussed the relevant state and federal cases with the parties at oral argument. Plaintiff argued that the split between state and federal courts on the issue of compensable hours under the NYLL encouraged forum-shopping, and that federal courts had improperly set aside state decisional law in favor of their own reasoning. (Oral Arg. Tr. 3:24-4:24). Defendants, on the other hand, argued that the state cases were wrongly decided and that the federal courts had correctly deferred to the NYDOL. (*Id.* at 13:25-16:12). Plaintiff agreed, however, that the NYDOL emergency regulation supplanted the

reasoning of *Tokhtaman* and that, as of October 6, 2017, Astra could properly deduct sleep and meal breaks from the count of compensable hours. (*Id.* at 3:3-14, 4:25-5:14).[6]

The Court is left to consider whether, prior to October 6, 2017, Astra could properly deduct 11 hours of break time under the NYLL from the time worked in a 24-hour shift. When an issue of state law is unsettled and the state's highest court has not opined, federal courts must give "proper regard to the decisions of a state's lower courts." *In re WorldCom, Inc. Sec. Litig.*, 336 F. Supp. 2d 310, 317 (S.D.N.Y. 2004) (internal quotation marks omitted) (quoting *Phansalkar* v. *Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 199 (2d Cir. 2003)). Indeed, it is not the role of federal courts to "adopt innovative theories that may distort established state law," but, rather, to "carefully predict how the state's highest court would resolve the uncertainties that we have identified." *Travelers Ins. Co.* v. *Carpenter*, 411 F.3d 323, 329 (2d Cir. 2005) (internal quotation marks and citations omitted).

The New York Court of Appeals has cited the minimum wage provision of the NYLL a mere four times, and none of those decisions addresses the scope of the provision or the proper metric of hours worked. The NYDOL's minimum wage regulation has been cited only seven times in reported decisions by New York state courts and never by the Court of Appeals. Six of these seven cases

---

[6] The colloquy at oral argument referred to October 25, 2017. (Oral Arg. Tr. 4:25-5:14). Though the emergency regulation was published in the New York State Register on October 25, 2017, it became effective on October 6, 2017. *See* 10/25/17 N.Y. St. Reg. LAB-43-17-00002-E.

concerned the home health care industry and all of them rejected the NYDOL's 2010 interpretive guidance. *Andryeyeva II*, 61 N.Y.S.3d at 282-83; *Moreno*, 61 N.Y.S.3d at 591; *Tokhtaman*, 52 N.Y.S.3d at 91; *Lai Chan*, 21 N.Y.S.3d at 826-28; *Andryeyeva I*, 994 N.Y.S.2d at 285-86; *Kodirov*, 2012 WL 1605258, at *1. The Court of Appeals has, however, spoken decisively on the subject of deference to agency interpretations of the statutes they enforce. That court has said: "[T]he construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld" such that the court "treads gently in second-guessing the experience and expertise of state agencies charged with administering statutes and regulations." *Entergy Nuclear Operations, Inc.* v. *N.Y. State Dep't of State*, 28 N.Y.3d 279, 289 (2016) (alteration in original) (internal quotation marks omitted); *see also Matter of Nat. Res. Def. Council, Inc.* v. *N.Y. State Dep't of Envtl. Conservation*, 25 N.Y.3d 373, 397 (2015); *Matter of Howard* v. *Wyman*, 28 N.Y.2d 434, 438 (1971).

The Court is persuaded by Judge Cote's thoughtful analysis in *Severin*. The NYDOL's 2010 letter does not appear, at first blush, to be unreasonable, and the Court shares the *Severin* court's concern about reading the phrase "available for work" in 12 N.Y.C.R.R. § 142-2.1(b) to mean, simply, present at the place of employment — a reading that would render the word "available" surplusage. *Severin*, 2012 WL 2357410, at *8. That said, the Court is sensitive to the equally problematic concern raised by state courts concerning the NYDOL's interpretation, which seemingly elides the important distinction

between residential and non-residential employees by holding both to the same standard, even though only residential employees are entitled to sleep and meal break deductions. This reading, arguably, renders the word "residential" surplusage. *See Andryeyeva II*, 61 N.Y.S.3d at 282-83; *Moreno*, 61 N.Y.S.3d at 591; *Tokhtaman*, 52 N.Y.S.3d at 91; *Lai Chan*, 21 N.Y.S.3d at 826-28; *Andryeyeva I*, 994 N.Y.S.2d at 285-86; *Kodirov*, 2012 WL 1605258, at *1. But, again, it is not the job of this Court to choose sides. Rather, the Court must guess, as best it can, how the Court of Appeals would rule if and when it is presented with this question.

On this point, the Court finds the reasoning of the Court of Appeals in *Barenboim* v. *Starbucks Corporation* to be instructive. 21 N.Y.3d 460 (2013). There, the Court of Appeals grappled with two certified questions from the Second Circuit regarding the proper construction of NYLL § 196-d's tip-sharing provision. The suit concerned two putative classes of Starbucks employees — one of baristas and one of assistant store managers — where the barista class argued that certain supervisors should be excluded from tip-sharing while the assistant store manager class argued that they should be included in tip-sharing. *Id.* at 467-68. The NYDOL, appearing as *amicus curiae*, encouraged the Court of Appeals to hold that tip-sharing should be limited to employees, such as waiters and busboys, who engage in direct customer service. *Id.* at 470-71.

The Court of Appeals so held and deferred to the NYDOL's reading of § 196-d in its Hospitality Industry Wage Order, 12 N.Y.C.R.R. § 146-2.14, that

"clarified and unified the [NY]DOL's tip-splitting policies previously found in a patchwork of opinion letters and a set of written guidelines dating back to 1972." 21 N.Y.3d at 471, 473. The court stated: "The Wage Order also codified the [NY]DOL's long-standing construction of [§] 196-d as limiting tip-pool eligibility to workers who 'perform, or assist in performing, personal service to patrons at a level that is a principal and regular part of their duties and is not merely occasional or incidental.'" *Id.* (quoting 12 N.Y.C.R.R. § 146-2.14(e)). Also instructive is the Court of Appeals' decision several years prior to *Barenboim* in *Samiento* v. *World Yacht Inc.* 10 N.Y.3d 70 (2008). There, the Court of Appeals also considered the NYLL tip provision and reversed the Appellate Division out of deference to a NYDOL opinion letter interpreting § 196-d as requiring that employers pass on mandatory gratuity charges to employees as a tip. *Id.* at 79-80. That interpretation was later codified in 2010 at 12 N.Y.C.R.R. § 146-2.18.

These cases, coupled with the Court of Appeals' well-settled view on broad deference to state agencies, *e.g.*, *Howard*, 28 N.Y.2d at 438, compels this Court to hold that the Court of Appeals would not follow the reasoning of the Appellate Division in *Tokhtaman*, *Andryeyeva*, and *Moreno*, and would instead defer to the NYDOL's long-standing interpretation of 12 N.Y.C.R.R. § 142-2.1(b) — recently codified in an emergency regulation[7] — to permit employers of home health care aides to deduct 11 hours from the count of compensable hours in a 24-hour shift provided that the aide is given eight

---

[7] The NYDOL renewed the emergency regulation on January 5, 2018.

hours to sleep, actually receives five uninterrupted hours of sleep, and receives three hours of breaks for meals.

Because the Court finds that Astra is permitted under New York law to deduct sleep and meal breaks, assuming the aides actually take those breaks, the Court will not belabor matters with a discussion of the requirements under Rule 23(a). The Court cannot hold, on the record before it, that common issues of law and fact "predominate over any questions affecting only individual members," or that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" sufficient to satisfy Rule 23(b)(3). Fed. R. Civ. P. 23(b)(3). To be sure, as the foregoing discussion on conditional certification makes clear, there is some evidence in the record — enough to meet the minimal burden specified by § 216(b) of the FLSA — that Astra violated the FLSA and, therefore, the NYLL provisions that largely mirror those in the federal law.

But the Court is mindful of the early stage at which this motion has been brought and the different standards applied to conditional certification under the FLSA and class certification under Rule 23. A motion under § 216(b) does not require a showing of numerosity, typicality, commonality, and representativeness. *See Contrera* v. *Langer*, No. 16 Civ. 3851 (LTS) (GWG), — F. Supp. 3d —, 2017 WL 4444829, at *5 (S.D.N.Y. Oct. 5, 2017). A collective action under the FLSA "creates a device less like a Rule 23 class action and more like permissive joinder" in which plaintiffs may opt-in, *Lee* v. *ABC Carpet & Home*, 236 F.R.D. 193, 196 (S.D.N.Y. 2006), such that "the sole consequence

of conditional certification [under § 216] is the sending of court-approved written notices to employees ... who in turn become parties to a collective action only by filing written consent with the court," *Contrera*, 2017 WL 4444829, at *5 (alteration in original) (quoting *Tyson Foods, Inc.* v. *Bouaphakeo*, 136 S. Ct. 1036, 1043 (2016)).  A court will later determine whether they are, in fact, similarly situated sufficient to permit collective resolution of their claims.  *Ruiz*, 93 F. Supp. 3d at 297.  Unsurprisingly, district courts in this Circuit have found that this *second* stage of FLSA collective certification closely parallels the requirements under Rule 23.  *See id.* at 298 (collecting cases).  The same cannot be said for the *first* stage — the stage at which this motion has been brought.

Unlike the minimal burden imposed by the FLSA, Rule 23 requires a more searching inquiry, and Plaintiff bears a heavy burden to satisfy the "'rigorous analysis' required at the class certification stage" that often "'entail[s] some overlap with the merits of the plaintiff's underlying claim.'"  *Ruiz* v. *Citibank, N.A.*, 687 F. App'x 39, 40 (2d Cir. 2017) (summary order) (quoting *Wal-Mart*, 564 U.S. at 351).  "Considering whether questions of law or fact common to class members predominate begins, of course, with the elements of the underlying cause of action."  *Garrido* v. *Money Store*, 649 F. App'x 103, 105 (2d Cir. 2016) (summary order) (internal quotation marks omitted) (quoting *Erica P. John Fund, Inc.* v. *Halliburton Co.*, 563 U.S. 804, 809 (2011)).  To establish liability under the NYLL for violations of the overtime provision, the class plaintiffs would have to show that they worked more than either 40 or 44

hours in a workweek, and that they were not compensated for the excess hours. 12 N.Y.C.R.R. § 142-2.2. This, in turn, depends on a determination of whether the class plaintiffs are residential or non-residential employees — the latter are entitled to overtime after 40 hours in a week while the former are only entitled to overtime after 44 hours in a workweek. *Id.* A liability determination also depends, to an extent, on the number of breaks an aide received and for how long. These questions cannot be answered by the documents before the Court.

To establish liability under the NYLL minimum wage provision, the class plaintiffs would have to show that they worked so many hours that their effective hourly wage rate fell below the minimum wage. 12 N.Y.C.R.R. § 142-2.1(a). While Plaintiff's counsel argues that these questions of liability are provable through the pay stub documents alone, the Court does not share that view. Without more evidence in the record about the conditions of employment for Astra's aides who worked overnight shifts, the Court cannot find at this juncture that Plaintiff has shown by a preponderance of the evidence that liability under the NYLL can be established through generalized proof or that the issues subject to individualized proof are not more substantial than those susceptible to class-wide proof. *See Glatt* v. *Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 538-39 (2d Cir. 2015); *In re Pub. Offerings Secs. Litig.*, 471 F.3d at 42.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for conditional certification of a collective action under 29 U.S.C. § 216(b) is GRANTED as defined by the Court. Plaintiff's motions under Federal Rule of Civil Procedure 23 for certification of classes for (i) minimum wage violations under the NYLL; (ii) overtime pay violations under the NYLL; (iii) "spread of hours" under the NYLL; (iv) violations of the WTPA; and (v) minimum wage under the WPA are all DENIED WITHOUT PREJUDICE. This case will proceed to discovery on Plaintiff's collective FLSA claims, and if in the course of that discovery Plaintiff can compile a more robust record on which this Court can find that Defendants' liability can be established without an individualized inquiry into the working conditions of each aide, Plaintiff may renew the motion.

The parties are ORDERED to meet and confer within 10 days of the date of this Opinion and to submit within 14 days of the date of this Opinion a proposed notice to the potential opt-in collective action members for the Court's consideration.

SO ORDERED.

Dated:     February 23, 2018
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge